Reeves R. TAYLOR and wife, Gloria
Beaubien Taylor,
Plaintiffs-Appellants,

v.

FLETCHER PROPERTIES, INC., et al.,
Defendants-Appellees.

No. 77-1316.

United States Court of Appeals,
Fifth Circuit.

March 29, 1979.

Carol Nelkin, Deborah B. Yahner, Houston, Tex., for plaintiffs-appellants.

Michael K. Swan, Houston, Tex., B. Thomas McElroy, Dallas, Tex., Robert M. Hardy, Jr., Houston, Tex., for defendants-appellees.

Before GEWIN, GEE and RUBIN, Circuit Judges.

GEE, Circuit Judge:

Reeves R. Taylor and Gloria Beaubien Taylor, a black married couple, brought this civil action against Fletcher Properties, Inc., Philip Ellis, Dan Matise, Matise Property Management, James Bennett, and the Barnett Winston Investment Trust and its individual trustees, alleging violations of provisions of the Civil Rights Act of 1866[1] and the Fair Housing Act of 1968.[2] The Taylors claim that racial discrimination motivated defendants' failure to rent them an apartment at Hollister House Apartments in Houston, Texas. The claims against defendants Dan Matise and Matise Property Management were dismissed before trial, and a directed verdict in favor of defendant James Bennett was granted at the close of all testimony. All other motions for directed verdict, including one made by plaintiffs, were denied. The court, utilizing special interrogatories, submitted several fact

1. 42 U.S.C. § 1982 provides:

All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property.

2. 42 U.S.C. § 3604 provides in pertinent part:

(a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, or national origin.

\* \* \* \* \* \*

(d) To represent to any person because of race, color, religion, sex, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available.

questions [3] to the jury. After return of a verdict unfavorable to plaintiffs' contentions, plaintiffs filed a timely motion for judgment notwithstanding the verdict or alternatively for a new trial. The trial court denied these motions and entered a take-nothing judgment for all defendants. We affirm.

The sole ground of error plaintiffs advance on appeal is the trial court's failure to grant their motions for directed verdict or for judgment notwithstanding the verdict. They argue that the evidence of racial discrimination in this case was so virtually uncontroverted that no fact issue was made for the jury. Our standard of review for judging the correctness of a trial court's grant or denial of motions for directed verdict and for judgment notwithstanding the verdict was carefully set out by this court in *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir. 1969) (en banc):

On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for

**3.** Question No. 1

Did Captain and Mrs. Taylor attempt to rent an apartment at the Hollister House on July 23, 1972?

Answer "Yes" or "No": _____No_____

Question No. 2

Were Captain and Mrs. Taylor denied the opportunity to rent an apartment at the Hollister House or was an apartment otherwise made unavailable to them or were representations made to them that an apartment was unavailable when in fact an apartment was available?

Answer "Yes" or "No": _____No_____

If you have answered the first two questions "Yes", and only in that event, then answer the following questions.

Question No. 3

Was the race of Captain and Mrs. Taylor an effective reason for such refusal or representation?

Answer "Yes" or "No": _____

If you have answered the first three questions "yes," and only in that event, then answer the following question.

Question No. 4

Do you find that Fletcher Properties, Inc., failed to adequately supervise the personnel at the Hollister House and to establish objective and reviewable procedural standards to be employed by them in connection with the rental or leasing of apartment units to Blacks?

Answer "Yes" or "No": _____

If you have answered all of the first four questions "yes," and only in that event, then answer the following question.

Question No. 5

Do you find that Captain and Mrs. Taylor, as a result of such illegal discrimination, have suffered any actual or nominal damages and, if so, in what amount?

Answer in dollars and cents: Actual  – $____
Nominal– $____

If you have found that Captain and Mrs. Taylor have suffered either actual or nominal damages, then answer the following question.

Question No. 6

As a result of such illegal discrimination, do you award any exemplary or punitive damages and, if so, in what amount?

Answer in dollars and cents: $_____

directed verdict and judgment n. o. v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question. However, it is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses.

411 F.2d at 374–75 (footnotes omitted). This test requires us to scrutinize the record carefully, to consider all the evidence submitted to the jury, and to view the evidence in the manner most favorable to defendants, who are the parties opposed to the motions. With this standard in mind, we shall review the evidence.

Plaintiffs' version of the facts concerning their visit to the Hollister House Apartments was largely uncontroverted; their characterization of defendants' motive and purpose in failing to rent to them was, however, strenuously contested. Reeves Taylor, then a commander in the United States Navy and now a retired captain, was transferred from his assignment as chief of the Reconnaissance Branch of the Joint Chiefs of Staff to Prairie View A&M University, where he was to be commanding officer of the Naval ROTC unit. He and his wife began looking for an apartment in Houston to rent on a temporary basis until they could purchase a home. The Taylors did not want to sign a lease because their need for an apartment would be only temporary. They went to Hollister House Apartments after a telephone call to that complex by Janice Ledger, a leasing agent at another apartment; the Taylors understood her to say that Hollister House had apartments available and would not require a lease.

At Hollister House the Taylors spent 35–40 minutes with a woman whom they could not identify, either by name or by position.

They told her they wanted a two-bedroom apartment, and the unidentified woman accompanied them from the office to an apartment by the swimming pool. This apartment was shown to the Taylors, but Mrs. Taylor considered it too noisy, and both Taylors thought the apartment was in need of renovation.[4] The woman told the Taylors another apartment was available but that it was also in a rather noisy area of the apartments.[5] On the way to inspect the second apartment, Captain Taylor saw some townhouses and inquired if any were available. The woman did not know but agreed to show them a townhouse that was to be used as a model. The Taylors saw the townhouse, which was dirty and had worn carpets, and then returned to the office to see if any townhouses were available to be rented.

The unidentified woman went into an inner office and conferred with a man inside. She returned and told the Taylors that no townhouses were available, that one of the two available apartments had been leased, and that she was unable to give them a definite date when the other would be renovated and ready for occupancy. The Taylors immediately left Hollister House and did not return or make any further inquiries about available units or about completion of the renovation. It is uncontroverted that the Taylors neither filled out an application nor were requested to submit to a credit check nor said at any time they wanted to rent any unit they were shown. Captain Taylor admitted that there had been no direct affront but alleged that the woman he dealt with was flustered and uncomfortable about assisting them and was "not respectful" to them.

Plaintiffs' argue on appeal that the testimony of defendant Philip Ellis conclusively established a violation of the Fair Housing Act. Indeed, a segment of his testimony, if read alone, appears damaging to defendants, but the testimony must be considered

---

4. There was plaster on the floor, draperies needed to be installed, and the carpet was torn and dirty.

5. The Taylors disagreed on where they were told the second apartment was located. Captain Taylor said it was also near the swimming pool, while Mrs. Taylor testified it was near the laundry room.

in its entirety. Ellis testified that the supervisor of the leasing agents, Herbert Tarnow, was personally a prejudiced man. Ellis also speculated that Tarnow "may have had" in mind a limit on the number of blacks at the Hollister House; but Ellis repeatedly stated, against vigorous cross-examination, that this was not a policy at the apartments, that the leasing agents were never told to turn blacks away, and that there was never a quota system imposed at Hollister House. Moreover, Ellis testified, as did Paul Fletcher, the president of defendant Fletcher Properties, Inc., that there were blacks living at the apartments during the summer of 1972 and that Hollister House leased to all races. Ellis characterized Tarnow's prejudice as "personal" and opined that the leasing agents were neither warned not to lease to blacks nor threatened with loss of their jobs if they did so. Shirli Marcantel, a former Hollister House leasing agent, also testified that Tarnow never instructed his agents not to lease to blacks and did not try to impose a quota on Hollister House.

Plaintiffs argue that the high vacancy rate at Hollister House during the summer of 1972 conclusively established that defendants misrepresented the availability of housing when the Taylors inquired. This argument ignores, however, the explanation offered by defendant Ellis. He testified that Hollister House suffered flood damage during the spring of 1972 and that the complex was being renovated during the summer. Paul Fletcher further stated that a purpose for the sale/lease-back transaction with defendant Barnett Winston Trust was to acquire funds to finance the renovations. Ellis explained that a vacancy during the summer of 1972 did not necessarily mean that the unit was available for occupancy; many vacant units could not be rented because they were in a state of disrepair and needed renovation. Ellis insisted that the Taylors did not want what was shown to them and that no other two- or three-bedroom units were available for occupancy when they inquired.

We think that there was a conflict in substantial evidence and that a clear jury issue was raised concerning whether defendants misrepresented the availability of an apartment, denied the Taylors an apartment, or otherwise made housing unavailable to them because of their race. We cannot say that "the facts and inferences point so strongly and overwhelmingly in favor of one party that . . . reasonable men could not arrive at a contrary verdict," and we affirm the trial court's denial of plaintiffs' motions for directed verdict and for judgment notwithstanding the verdict. *Boeing Co. v. Shipman, supra.* We likewise affirm the denial of plaintiffs' alternative motion for a new trial. Our standard of review permits reversal of such rulings for an abuse of discretion only, and we have stated that the motion should be granted only if the verdict is against the *great* weight of the evidence. *Cities Service Oil Co. v. Launey,* 403 F.2d 537, 540 (5th Cir. 1968). If we were to require a new trial merely because we may disagree with the verdict, the role of the jury as the principal trier of fact would be destroyed. The evidence of racial discrimination in the instant case was at most conflicting, and we are "not free to reweigh the evidence and set aside the jury verdict [simply] because the jury could have drawn different inferences or conclusions or because [we] feel that other results are more reasonable." *Tennant v. Peoria & Pekin Railway,* 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520 (1944).[6]

**6.** Of course, the plaintiffs are not required to prove that race was the sole factor that was in the mind of the rental agent. *Burris v. Wilkins,* 544 F.2d 891 (5th Cir. 1977); *United States v. Pelzer Realty Co.,* 484 F.2d 438 (5th Cir. 1973), *cert. denied* 416 U.S. 936, 94 S.Ct. 1935, 40 L.Ed.2d 286 (1974). *See also United States v. Reddoch,* 467 F.2d 897 (5th Cir. 1972) (assistant managers testified to receiving racially discriminatory instructions from the owner of the apartment building). Our decision is based on the conclusion that there was substantial evidence to support the jury's conclusion that the plaintiffs' race was not a significant factor in the defendants' actions.

Accordingly, the judgment of the district court is AFFIRMED.[7]

7. Plaintiffs' counsel objected at trial to the submission of special interrogatory number 1 on the ground that the "attempt to rent" language would allow the jury to require "more affirmative action on the part of plaintiffs other than inquiring about the apartment." Counsel correctly argued that the defendants could make an apartment unavailable in ways that would preclude plaintiffs from making any overt attempt to rent. The trial judge overruled this objection. Of course, counsel's assertion was correct: a negative answer to the first interrogatory was not dispositive of the case, though it is scarcely a fatal objection to a special interrogatory that it does not incorporate all grounds of recovery. A more cogent objection is that the matters about which it somewhat ambiguously inquires were undisputed however it be read; no one claimed that the Taylors did not make an "attempt" in the sense of inspecting the available accommodations, nor did the Taylors claim that they made a formal application. At all events, we believe that error was rendered harmless by the jury's negative answer to interrogatory number 2. That question squarely presented plaintiffs' theories to the jury; the jury was asked to determine whether defendants denied plaintiffs an opportunity to rent an apartment or otherwise made an apartment unavailable to them or made false representations about the availability of apartments. Plaintiffs do not contend that a negative answer to number 1 compelled a negative answer to number 2, nor was the jury required to answer number 2 only if they gave an affirmative answer to number 1. The negative answer to interrogatory number 2, as we have held above, was supported by substantial evidence, and we are unprepared to say that plaintiffs were prejudiced by submission of the "attempt to rent" interrogatory.