**John FRANKS, Plaintiff-Appellee,**

**v.**

**ASSOCIATED AIR CENTER, INC., Defendant-Appellant.**

**No. 81–1187**

**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

Dec. 11, 1981.
Rehearing Denied Jan. 11, 1982.

L. W. Anderson, M. Troy Murrell, Dallas, Tex., for defendant-appellant.

Burt Berry, Dallas, Tex., for plaintiff-appellee.

Before AINSWORTH, REAVLEY and RANDALL, Circuit Judges.

PER CURIAM:

This diversity case involves a suit by plaintiff John Franks against defendant Associated Air Center, Inc. ("Associated") for negligently damaging Franks' airplane while attempting to repair it. Franks also sued under Texas' Deceptive Practices—Consumer Protection Act, Texas Bus. & Com.Code Ann., § 17.41 *et seq.* (Vernon) alleging that Associated had charged him an unconscionable amount for its services. A jury found for Franks on both claims, and the trial judge denied Associated's motions for judgment notwithstanding the verdict and a new trial. Associated now appeals from the denial of its motions. We remand for a new trial on the issue of damages to be awarded Franks as a result of Associated's negligence and affirm the judgment in all other respects.

On October 15, 1976, a HFD 320 Hansa jet aircraft, owned by plaintiff John Franks, was flown from Shreveport, Louisiana to the repair facilities of Defendant

Associated Air Center, Inc., in Dallas, Texas. The plane was flown by two employees of Franks: Leland D. Hester, a pilot and mechanic, and Jerry Lynch, the chief pilot. The plane was brought to Associated for repair of the landing gear and landing gear doors of the aircraft. The plaintiff's employees were alerted to the problem by the fact that a warning light in the cockpit indicated that the wheel door, which was supposed to close following retraction of the landing gear, would not completely close.

Hester and Lynch brought the plane to Associated to determine the reason why the door would not close. The most likely possibility was that the problem was either with the main landing gear wheels or with the doors that normally would close in sequence after the wheels were retracted while the plane was in the air.

In order to determine the cause of the malfunction, a retraction test was performed. The plane was placed upon jacks and a platform and lifted from the floor. Because the plane's motor was not running, an external source of hydraulic power was necessary. A device called a hydraulic mule was used to pump fluid through the plane's hydraulic system. The hydraulic mule is equipped with controls which allow it to vary the hydraulic pressure exerted. (The pressure is measured in pounds per square inch).

Present at the test were David Jewell, Donald Frank Lepek and three other Associated employees, along with Hester and Lynch, who were employed by the plaintiff Franks. Lynch sat in the cockpit and was instructed to raise and lower the landing gear while defendant's employees applied pressure to the plane's hydraulic system through the use of the hydraulic mule. The left and right main landing gears appeared to function normally but the doors still would not close properly. In order to diagnose the problem with the right main landing gear, the left main landing gear was pinned in the down position and the right landing gear was then moved to the beginning of the retraction and door closing cycle. The right main landing gear still would not retract completely after several recyclings. During the last recycling, there was a loud ripping noise. Considerable damage occurred to both landing gear systems of the aircraft, and substantial amounts of hydraulic fluid were sprayed about.

The aircraft was taken off the jacks and moved to a hangar for storage. The plane was subsequently moved to the repair facilities of Rockwell International. Rockwell repaired the plane at a cost of $4,416.40 in labor, and $7,026.07 in parts ordered from Hansa Jet Corporation. On top of this, Franks received a bill from Associated for $2,175.00 in labor charges.

Franks brought the present diversity action in the Northern District of Texas, alleging that Associated's employees had negligently applied too much pressure to the plane's hydraulic system, thus causing the damage to the aircraft. Franks also sued under the Texas Deceptive Trade Practices—Consumer Protection Act, Texas Bus. & Com.Code Ann., § 17.41 *et seq.* (Vernon), alleging that Associated's $2,175.00 charge for labor services was "unconscionable" under the meaning of the Act. Associated claimed in defense that the employees who performed the retraction test were borrowed employees of Franks, that the damage was caused not by their negligence but by a design defect in the landing gear, and that the labor charge included expenditures for storage, clean up, and inspection services and was not excessive. In response to special interrogatories the jury found (1) that Associated's employees were not borrowed employees of Franks, (2) that Associated's employees had been negligent in their performance of the retraction test, (3) that the negligence was the proximate cause of the failure of the landing gear while it was tested, (4) that the damages recoverable for negligence were $8,000, (5) that Associated's labor charge was unconscionable, and (6) that Franks was entitled to recover $2,005 of the labor charge. Associated moved for judgment notwithstanding the verdict and in the alternative, for a new trial on all issues. The trial judge denied

both motions. Associated now appeals from the trial judge's decision.

*Standards of Review*

The trial judge's denial of the motion for judgment notwithstanding the verdict and his denial of the motion for a new trial are subject to different standards of review. This circuit's standard of review with respect to a motion for judgment notwithstanding the verdict was set out in detail in its en banc decision in *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir. 1969):

> On motion for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n. o. v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question. However, it is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses.

*Id.* at 374–75. *Accord, Fenner v. General Motors Corp.*, 657 F.2d 647 (5th Cir. 1981); *Darien Bank v. Travellers Indemnity Co.*, 654 F.2d 1015 (5th Cir. 1981); *Ellis v. Chevron U.S.A., Inc.*, 650 F.2d 94 (5th Cir. 1981);

*Gaspard v. Taylor Diving & Salvage Co.*, 649 F.2d 372 (5th Cir. 1981).

 A motion for a new trial is justified only if the verdict is against the great weight of the evidence. However, the decision to grant or deny a motion for a new trial rests in the sound discretion of the trial judge and will only be set aside upon a showing of clear abuse. *Conway v. Chemical Leaman Tanklines, Inc.*, 610 F.2d 360 (5th Cir. 1980); *Taylor v. Fletcher Properties, Inc.*, 592 F.2d 244 (5th Cir. 1979); *Spurlin v. General Motors Corp.*, 528 F.2d 612 (5th Cir. 1976); *Cities Service Oil Co. v. Launey*, 403 F.2d 537 (5th Cir. 1968); *see also* 6A Moore's Federal Practice ¶ 59.08[5] (2d ed. 1976). Where the trial judge has denied the motion and left the decision of the jury undisturbed, this circuit has shown even greater deference to the trial judge's discretion. *Evers v. Equifax, Inc.*, 650 F.2d 793 (5th Cir. 1981); *Conway, supra; Valley View Cattle Co. v. Iowa Beef Processors*, 548 F.2d 1219 (5th Cir.), *cert. denied*, 434 U.S. 855, 98 S.Ct. 174, 54 L.Ed.2d 126 (1977); *Massey v. Gulf Oil Corp.*, 508 F.2d 92 (5th Cir.), *cert. denied*, 423 U.S. 838, 96 S.Ct. 67, 46 L.Ed.2d 57 (1975). With the proper standards of review in mind, we now consider whether the evidence in the record was sufficient to support the trial judge's actions.

*The Borrowed Servant Issue*

 Associated's first claim is that the record does not support the jury's finding that the five Associated employees involved in the accident were not borrowed servants of Franks at the time of the accident. *Producers Chemical Company v. McKay*, 366 S.W.2d 220 (Tex.1963), states the basic doctrine in Texas:

> Whether general employees of one employer have, in a given situation, become special or borrowed employees of another employer is often a difficult question, particularly when employees are furnished with machinery by their general employer to accomplish part of a project or contract undertaken by another. Solution of the question rests in rights of

control of the manner in which the employees perform the services necessary to accomplishment of their ultimate obligation. If the general employees of one employer are placed under control of another employer in the manner of performing their services, they become his special or borrowed employees. If the employees remain under control of their general employer in the manner of performing their services, they remain employees of the general employer and he is liable for the consequences of their negligence. [citations omitted] . . . As the Supreme Court of the United States put it in *The Standard Oil Co. v. Anderson*, 212 U.S. 215, 221–222, 29 S.Ct. 252, 254, 53 L.Ed. 480:

> "To determine whether a given case falls within the one class or the other we must inquire whose is the work being performed,—a question which is usually answered by ascertaining who has the power to control and direct the servants in the performance of their work. Here we must carefully distinguish between authoritative direction and control, and mere suggestion as to details or the necessary cooperation, where the work furnished is part of a larger undertaking."

*McKay, supra*, at 225–26. The right of control is normally one of fact for the jury, *Sparger v. Worley Hospital*, 547 S.W.2d 582 (Tex.1977); *J.A. Robinson Sons, Inc. v. Wigart*, 431 S.W.2d 327 (Tex.1968); and the burden of proof rests with the defendant. *Dodd v. Twin City Fire Insurance Co.*, 545 S.W.2d 766 (Tex.1977). Associated's contention is that when the retraction test was being performed, Franks' employees, Hester and Lynch, had the right to control the Associated employees working on the aircraft.

The record indicates that the retraction test was performed with Associated's employees working the hydraulic mule, and with Lynch, the pilot, seated in the cockpit and operating the gear handle which activated the landing gear mechanism. Hester, the mechanic and co-pilot, stood by and watched the proceedings. David Jewell, an Associated employee, told Lynch when to raise and lower the landing gear as Donald Frank Lepek, another Associated employee, operated the mule.

There is considerable evidence to support the jury's finding that the pilot, Lynch, did not have a right of control over Associated's employees. After all, Lynch was in the cockpit and was unable to see what Jewell was doing; more importantly, he was actually being instructed by Jewell when to raise and lower the landing gear. Rather, Associated's major argument is that Hester, who was standing on the ground, had the right to control the retraction procedure, and hence Jewell, Lepek, and the other Associated employees were borrowed servants of Franks.

Associated contends that regardless of whether Hester did actually supervise the procedure, the fact that he felt he had the right to tell Associated's employees that they were doing something wrong if he saw it meant that he had a right of control. Although neither Lynch nor Hester felt that they were "running the whole thing", both agreed that if they had seen any of the Associated employees do anything improper, they would have told them not to do it. Associated points to this fact as proof that a right of control existed.

■ We think this argument misconstrues the meaning of "right of control" in the context of the borrowed servant doctrine. The fact that an employer gives general instructions and directions to the employee of another is not sufficient to make the latter a borrowed servant. *Humphreys v. Texas Power and Light Company*, 427 S.W.2d 324 (Tex.Civ.App.—Dallas 1968, writ ref'd n. r. e.); *McKay, supra*. Nor is a co-operation and consultation with the employees enough to establish a right of control. *McKay, supra*. "[R]ight of control is necessarily determined as an inference from such facts and circumstances as the nature of the general project, the nature of the work to be performed by the machinery and employees furnished, length of the special employment, the type of machinery fur-

nished, acts representing an exercise of actual control, the right to substitute another operator of the machine, etc." *Id.* at 226.

The record shows that Hester stood by while Jewell and Lepek used the mule to go through the landing gear cycle two or three times. At that point Hester and Jewell discussed the possibility of fixing the landing gear doors in place and checking the rigging on the right landing gear. Nowhere is there any suggestion that Hester was directing the operation or giving specific orders. The jury might easily have concluded that Hester's co-operation and discussion with Jewell demonstrated that he had no right to exercise authority and control. Moreover, Hester did not instruct Lepek to operate the mule or instruct Lynch to raise and lower the landing gears. Hester testified that although he did not notice Associated's employees doing anything wrong, he could not see how much pressure Lepek was applying through the use of the hydraulic mule. "Under these circumstances, right of control of the manner of operating the equipment is the decisive factor, not control of the result to be accomplished by the equipment." *J.A. Robinson Sons, Inc. v. Wigart,* 431 S.W.2d 327 (Tex.1968).

■ Finally, as *McKay* points out, the right to substitute another operator is an important factor to be considered in determining the right of control. There is no evidence in the record that Hester could have ordered Lepek to stand aside and let him operate the machine by himself. Although it is undisputed that Hester knew how to operate a hydraulic mule, the pilot, Lynch, testified that "[y]ou don't go into somebody's shop and operate their machinery." In the light of all these considerations, we think that the jury had more than enough evidence to find that no right of control over Associated's employees existed, and hence that the latter were not borrowed servants of Franks. The trial judge was correct in denying the motions for a judgment n. o. v. and for a new trial as to this issue.

*Negligence and Proximate Cause*

Evidence at trial centered around the question of whether excessive pressure had been applied to the plane's hydraulic system by use of the hydraulic mule and whether this caused the damage to the planes landing system. The planes' hydraulic system was designed to operate at 3000 psi when the plane was in flight. Associated produced evidence that the airplane's hydraulic system was equipped with relief valves which would relieve pressure on the hydraulic system if it exceeded 3600 psi. There was also evidence that the left landing gear system had a fatigue crack in it of approximately an eighth of an inch in length; similar fatigue fractures observed on two other Hansa jets had resulted in the issuance of a service bulletin by the manufacturer on the problem. However, this bulletin was issued a year and a half after the accident which forms the basis of this litigation. Jewell testified that Lepek brought the pressure of the hydraulic mule up gradually to observe the gears working. He testified that the pressure never got past 1900 psi. Lepek corroborated his testimony. Both Jewell on direct and Lynch on cross-examination testified that it took approximately 1900 psi to start the gear system up.

Plaintiff Franks called as an expert witness Dr. James Hayes, an aeronautical engineer. Hayes testified that the damage to the aircraft could only have been caused by excessive hydraulic pressure. According to Hayes, the metal structures in the landing gear system would not have broken unless the pressure produced was at least over 3000 psi. Hayes noted that a fatigue crack did exist in the castings of the left main landing gear system but stated that the parts with the fatigue crack would have sustained only a two percent loss of strength thereby; and that "[i]n other words, that part is about 98 percent as strong as when it came from the factory." III Rec. 176. Hayes testified that even with the fatigue crack the gear system would not have failed at 3,000 psi. He testified that the lowest point that the system might have failed at was 3300 psi, and

that it might have failed at any pressure above that.

Hayes also pointed out that the fact that the relief valves were designed to relieve pressure above 3600 psi did not necessarily mean that the pressure could not have exceeded 3600 psi. The relief valves operated by relieving fluid at a certain rate. If fluid was being pumped in faster than the relief valves could dispose of it, pressure could easily have exceeded 3600 psi. (The maintenance manual supplied by Hansa stated that an external hydraulic unit should not be permitted to feed more than forty liters of fluid per minute through the aircraft.) Finally, Hayes testified that although he found no evidence of fatigue cracks in the right main landing gear system, this system was also damaged as a result of the accident. He also stated that even if there were a fatigue crack in the left landing gear system, and even if no damage had occurred to the right gear system, the left system could not have failed without excessive pressure.

On the basis of this evidence we think that a reasonable jury could have inferred that Associated's employees negligently permitted excess pressure to build up in the airplane's hydraulic system, that an ordinary person using reasonable care should have foreseen that the excess pressure might cause damage to the airplane, and that the negligence was indeed the proximate cause of the damage. Hayes' testimony, if believed by the jury, would have answered the possible alternate explanation of the accident offered by the defendants; i. e., that the damage was due to a design defect. It would also have explained why the relief valves might not have been effective to prevent high pressures from building up in the plane's hydraulic system.[1] Accordingly, we think evidence of negligence was sufficient to go to the jury, and the denial of the judgment n. o. v. was proper. In addition, we cannot say that evidence of negligence and proximate cause weighs so heavily in favor of defendants that the trial judge abused his discretion by denying a new trial on these issues.

*Damages*

Associated's first contention is that Franks suffered no damage at all. Associated relies on the Hansa service bulletin issued by the aircraft manufacturer one and a half years after the accident. Franks' mechanic, Hester, testified that the recommendations for repair in the service bulletin would have been followed and that these would have required substantially the same repairs that Rockwell performed. Associated claims that because one and a half years later Franks would have made the same repairs to his plane when the service bulletin was issued, he suffered no damage at the time of the accident for which he could be compensated.

We find this argument unimpressive. The defendant is attempting to escape responsibility for compensating present injury to plaintiff by claiming that plaintiff would have discovered a slight defect in his aircraft a year and a half later and made repairs. However, Franks is entitled to compensation sufficient to put his airplane back in the condition (slightly defective or otherwise) that it was before the defendant damaged it through its negligence. *See Pasadena State Bank v. Isaac,*

---

1. Associated argues that the only way negligence could be found is on a theory of *res ipsa loquitur* and that such a theory is inappropriate in a case where there is another possible explanation for the damage caused. Associated relies on *Mobil Chemical Company v. Bell,* 517 S.W.2d 245 (Tex.1974) for this proposition. However, *Mobil* states the rule as being that "the possibility of other causes does not have to be eliminated, but their likelihood must be so reduced that the jury can reasonably find by a preponderance of the evidence that negligence, if any, lies at the defendants door." *Id.* at 251. Defendant's explanation of the accident as caused by a structural defect in the left landing gear system would not explain the damage to the right landing gear system where no defect was found. Thus we think that a jury could reasonably eliminate design defect as the proximate cause of the damage. In any case, Franks was not required to rely on a theory of *res ipsa loquitur,* since negligence can always be proved through circumstantial evidence. *Id.* at 256.

149 Tex. 47, 228 S.W.2d 127 (1950); *Columbia Southern Chemical Corp. v. Johnson*, 297 S.W.2d 373 (Tex.Civ.App.—San Antonio 1956, no writ). If the repairs made put the airplane in a *better* condition, that goes only to the question of what percentage of the repair costs is purely compensatory (*i. e.*, restores the airplane to its previous condition); it does not allow defendant to avoid any payment for the consequences of its negligence. The situation here is the inverse of the situation where defendant tries to avoid payment of damages by showing that a plaintiff has a collateral source of compensation (for example, insurance benefits); in the present case defendant is trying to show that plaintiff has a collateral "detriment," *i. e.*, that he would have expended the money later anyway. We do not think that a defendant should be able to escape responsibility any more in this case than in the case of a collateral source where it has long been settled that a defendant is not relieved of his duty to compensate. *See, e. g., Brown v. American Transfer and Storage Co.*, 601 S.W.2d 931 (Tex.), *cert. denied*, 449 U.S. 1015, 101 S.Ct. 575, 66 L.Ed.2d 474 (1980).

The jury awarded Franks $8,000 for damage to his airplane. The record shows that Rockwell International charged Franks $7,026.07 for parts and $4,416.40 for labor. Associated does not contest that there is some evidence in the record that the charge for parts was a fair and reasonable sum. Rather, it claims that there is no evidence that the charge for labor was reasonable.

■ We agree that there is no evidence in the record which speaks to the reasonableness of Rockwell's labor charge in this case. Franks produced as a witness David

Hobza, service director of aircraft maintenance for Cooper Airmotive. (Subsequent to the repair of the Hansa aircraft, Rockwell had sold the service facility where the jet was repaired to Cooper). Hobza testified to the correctness of the business records which stated the amount of hours consumed and cost of parts used in Rockwell's repair of the aircraft. However, on cross-examination, Hobza admitted that he had no personal knowledge of the necessity of the repairs done or the reasonableness of their cost. No other evidence of the reasonable cost of the labor involved was offered by Franks. Under Texas law, the reasonableness of the cost of repairs is an essential element in plaintiff's proof of damages. *Pasadena State Bank v. Isaac*, 149 Tex. 47, 228 S.W.2d 127 (1950); *Truck Farm, Inc. v. Allen*, 608 S.W.2d 296 (Tex.Civ.App.—Dallas 1980, no writ); *Frost National Bank of San Antonio v. Kayton*, 526 S.W.2d 654 (Tex.Civ.App.—San Antonio 1975, writ ref'd n. r. e.); *Hyatt v. Tate*, 505 S.W.2d 373 (Tex.Civ.App.—Houston 1974, no writ). Although the reasonableness of repairs can be proved by circumstantial evidence, *Moren v. Pruske*, 570 S.W.2d 442 (Tex.Civ.App.—San Antonio 1978, writ ref'd n. r. e.), Franks produced nothing which would serve that purpose.[2]

■ Our inquiry does not end here, however. We must consider whether the judge's action in denying Associated's motions should be reversed under our limited standards of review. A refusal by a federal trial judge to grant a new trial as to the amount of damages awarded by a jury is reversible only for abuse of discretion, and only where the jury's verdict is unsupported by the record. *C.A. May Marine Supply Co.*

2. In his trial brief Franks argues that the reasonableness of the charge can be arrived at by an "eclectic" method. There was evidence that Associated had charged $14.00 an hour for labor to perform a previous gear retraction on June 16, 1975. Associated's Executive Vice President, Jack Hill, testified on direct examination by Associated that Associated's charge of $2,175.00 for eighty to ninety five hours of clean up work and inspection was "more than fair and reasonable." Franks computes this to be a rate of $22.90 to $27.18 per hour for

Associated's work. However, there is no evidence that Associated performed services similar to Rockwell's or that the labor charges by Associated for similar services would be the same as its charges for the services it did perform. *See Truck Farm v. Allen, supra*, at 297. Indeed, it is unlikely that Rockwell and Associated performed similar services since the record indicates that Rockwell repaired damaged portions of the plane and that Associated did not. Thus we cannot use Franks' "eclectic" method to justify the jury's verdict.

v. Brunswick Corp., 649 F.2d 1049 (5th Cir. 1981).[3] An example of when an abuse of discretion has been found is in *Davis v. Becker & Associates, Inc.*, 608 F.2d 621 (5th Cir. 1979). In *Davis*, a jury found that defendant negligently caused plaintiff's injuries, making her unable to work. The jury found that plaintiff was due $20,000 for lost earnings as a result of those injuries, but awarded no damages for pain and suffering, despite the fact that uncontroverted evidence showed considerable physical pain and suffering and that this was the reason for her inability to work. Another instructive example is *Lucas v. American Manufacturing Co.*, 630 F.2d 291 (5th Cir. 1980), where the defendant had stipulated beforehand that plaintiff had incurred $8,503 in expenses as a result of his injuries. The jury found that the defendant was liable for the injuries and that plaintiff was entitled to compensation, but only awarded the plaintiff $3,500.

The present case does not involve the same sort of inconsistencies as were found in *Lucas* and *Davis*. Rather, there is simply no evidence upon which to determine the reasonableness of the labor cost. The jury had evidence of the reasonable cost of the parts required to repair the airplane. This alone, however, would account for only $7,000 of the jury's $8,000 verdict. It is possible that the jury could have concluded that a $1,000 labor charge was appropriate

under the circumstances, without any evidence in the record upon which to base that determination. On the other hand, the jury could have concluded that more work was done in terms of both labor and parts than was necessary to return the aircraft to the state it was in prior to the accident, given the uncontested evidence that the aircraft was not in perfect working order at the time of the accident. Thus a verdict of $8,000, or approximately three-fourths of the total labor and parts charge, might have been arrived at as a reasonable approximation of the work needed to put the aircraft back to its pre-accident state. We simply do not know how much of the jury award is attributable to the parts and how much to labor. Given this, the entire $8,000 award cannot be sustained as a matter of law.

However, precisely because the jury's attribution of damages between parts and labor is impossible to determine, a judgment notwithstanding the verdict for Associated on the issue of damages is inappropriate. We are unable to say as a matter of law what the proper amount of damages should be, and since the evidence could support the reasonableness of an expense for parts, the jury was justified in awarding some figure over zero.[4]

Associated's motion for a new trial poses a different question, however. The

---

**3.** This test has been phrased in many differing ways, but always seems to focus around the respect afforded jury discretion in computing damages. *E. g., Ballou v. Henri Studios, Inc.*, 656 F.2d 1147 (5th Cir. 1981), (test is abuse of discretion by jury); *Bailey v. Southern Pacific Transportation Co.*, 613 F.2d 1385 (5th Cir.), *cert. denied*, 449 U.S. 836, 101 S.Ct. 109, 66 L.Ed.2d 42 (1980); *Bridges v. Groendyke Transport, Inc.*, 553 F.2d 877 (5th Cir. 1977) (reversal warranted only where verdict is so gross as to be contrary to right reason or a clear abuse of discretion); *Smith v. Piedmont Aviation*, 567 F.2d 290 (5th Cir. 1978) (awards to be upheld unless they shock the judicial conscience).

**4.** Moreover, even though there was no evidence on the amount of labor charge that would be reasonable, clearly some amount was reasonable, as the jury was justified in assuming that plane mechanics do not work for free. In

*Truck Farm v. Allen, supra*, a Texas appellate court was confronted with an analogous situation. *Allen* involved a suit under the Texas Deceptive Trade Practices Act in which the defendants had misrepresented that a tractor engine was in good condition when they sold it to plaintiff. The plaintiff had to make repairs on the engine and proved this at trial, but there was no evidence of the reasonableness of the repairs. On appeal, the court reversed the jury's award of damages, but remanded for a new trial instead of rendering a verdict for defendants; it did this because evidence was undisputed that plaintiff had suffered some damages as a result of defendants' misrepresentations. *See also Hyatt v. Tate, supra.* (Where no evidence had been offered as to reasonableness of repairs, trial court should have awarded at least nominal damages and "justice [would] best be served by a remand for new trial.")

jury's damage award was clearly unsupported by the evidence before it; we think under these circumstances that the trial judge's denial of the motion for a new trial constituted an abuse of discretion. *C.A. May Marine Supply Co. v. Brunswick Corp.,* 649 F.2d 1049 (5th Cir. 1981); *McKinzie v. Fleming,* 588 F.2d 165 (5th Cir. 1979). Hence we think the proper procedure is to remand for a new trial on the issue of damages.

### Consumer Protection Claim

Associated also contests the jury's finding that Associated's service charges to Franks totaling $2,760.95 were unconscionable under the Texas Deceptive Practices—Consumer Protection Act, and that Franks was entitled to $2,005.00 in damages. The $2,760.95 was the sum of several different components: (1) $560.00 for storage of the plane by Associated, (2) $25.95 in freight charges, and (3) $2,175.00 in charges for labor by Associated's employees. The record indicates that only two to three hours of work was spent by Associated's employees repairing the aircraft prior to the accident. During these repairs, there were three persons actively working on the plane; two other employees stood near the work area to keep any passers-by away from the airplane as a safety precaution.

Associated introduced evidence of other work it performed after the accident. The landing wheels were placed back down, both landing gears were pinned, and one landing gear was splinted so that it would not collapse. This took Associated approximately 15 to 20 hours. Associated's employees also spent 30 hours at inspections by Hansa and the FAA. Mr. Jack E. Hill, Executive Vice President of Associated, testified that he also spent between 15 to 18 hours with the inspectors. Associated also had its employees prepare for inspections by removing seats from the cabin of the aircraft, taking up the floor and cleaning the aircraft, all of which consumed 20 to 30 hours. Hill testified that Associated employees spent some time researching various materials about Hansa jets, although there is no evidence about how much time exactly was spent. Finally, Associated employees spent some time in cleaning up the hydraulic fluid resulting from the accident, but again, there is no evidence in the record as to how long this took. Associated estimates that the total time spent by its employees on the aircraft was between 80 and 113 man hours.

The Texas Deceptive Practices—Consumer Protection Act defines an "unconscionable action or course of practice" as follows:

(5) "Unconscionable action or course of action" means an act or practice which, to a person's detriment:

. . . .

(B) results in a gross disparity between the value received and consideration paid, in a transaction involving transfer of consideration.

Tex.Bus. and Comm.Code Ann., § 17.45(5) (Vernon).

The evidence in the record indicates that Associated did no further repair work for Franks after the accident. Franks' Mechanic, Hester, testified that pinning the gears, splinting the landing gear assembly and preparing the plane for inspection should have taken no more than an hour. Finally, Hester testified that following Rockwell's repair of the landing gear systems, the landing gear doors still would not close properly. Hester took the plane back to Shreveport and fixed it himself in about an hour.

Based on this evidence we think the jury could have reasonably concluded that the value of the services received by Franks from Associated was grossly disparate from the amount Associated charged Franks. There is very little law in Texas construing unconscionability as so defined, but one case may prove instructive. In *Sam Kane Beef Processors, Inc. v. Manning,* 601 S.W.2d 93 (Tex.Civ.App.—Corpus Christi 1980, no writ), the plaintiff alleged in his complaint that he purchased 600 pounds of hamburger meat from defendant for $732.90, that the meat was too full of moisture to be made into patties and thus was useless to plaintiff for its intended purpose. The defendant

argued that a wrongful intent or intent to deceive was necessary to state a cause of action under the Deceptive Trade Practices Act. The court rejected this argument, quoting the definition of unconscionability in § 17.45(5)(B) which made no mention of deception or wrongful intent; the court held that the allegation of a gross disparity between consideration paid and value received was sufficient for venue purposes.

Although *Sam Kane* did not involve an adjudication on the merits, we think that it stands for the proposition that when the plaintiff relies on the second definition of unconscionability expressed in § 17.45(5)(B), gross disparity and not deception is the gravamen of the action. We think as well, on the basis of the facts in *Sam Kane*, that the jury in this case acted reasonably when it considered a charge for 80 to 113 hours of repair work grossly disparate to the value of the services received, when the record revealed that Franks' mechanic was later able to fix the same problem in one hour.

As to the amount of damages paid to Franks under the unconscionability claim, we also think that a reasonable jury could have arrived at the amount actually awarded. If one deducts from the $2,760.95 charge by Associated the jury's award of $2,005.00, the figure which remains is $755.95. Deducting $560.00 for storage charges and $25.95 for freight charges, one is left with a labor charge of $170.00. The repair work prior to the accident (this being only repair work which was done) involved 5 Associated employees working between two and three hours. Franks argues that Rockwell's flat rate for labor was $17.00 per hour, so that the $170.00 may be seen as equivalent to an award of repair labor for five employees working two hours each at $17.00 an hour. It was well within the jury's discretion to consider any further la-

bor charges grossly disparate to the value received by Franks.[5] Given Hester's later testimony of his one hour repair of the aircraft, such an award might even be seen as overly generous to Associated. In any case, we are convinced that a reasonable jury could have found the labor charges to be unconscionable and could have arrived at the amount of damages in question; we are also convinced that the trial judge did not abuse his discretion when he refused to grant a new trial on these issues.

In summary, we affirm the trial judge's denial of Associated's motions for judgment n. o. v. and for a new trial, with the exception of the motion for a new trial on the issue of damages caused by Associated's negligence. We reverse the district court's judgment as to that motion and remand for a new trial on the issue of damages.

AFFIRMED IN PART, REVERSED and REMANDED IN PART.

---

5. Of course our earlier discussion has pointed out that there is no evidence that this $17.00 rate was reasonable. But that is not dispositive with respect to the question of "gross disparity" before us now. First of all, if the rate was too high a charge for labor, Associated could not complain as this would have made the award to Franks even smaller. Moreover, Associated had previously performed a gear

retraction procedure in 1975 and had charged $14.00 per hour. These factors taken together lead us to believe that the jury had sufficient evidence to decide that a charge over $170.00 was "grossly disparate" to the value received by Franks. We emphasize that this is not equivalent to a finding that a charge of $170.00 was in fact reasonable.