**POTERE, INC., Appellant,**

v.

**NATIONAL REALTY SERVICE,**
**Appellee.**

No. B14–83–050CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 19, 1984.

Rehearing Denied Feb. 23, 1984.

Tom Collins, Arthur A. Stewart, Sheinfeld, Maley & Kay, Houston, for appellant.

Clinard J. Hanby, Haynes & Fullenweider, Houston, for appellee.

Before PAUL PRESSLER, CANNON and ELLIS, JJ.

## OPINION

PAUL PRESSLER, Justice.

Appellee recovered damages in a nonjury trial under the Texas Deceptive Trade Practices—Consumer Protection Act. TEX.BUS. & COMM.CODE ANN. § 17.41 et seq (Vernon Supp.1982–1983) (hereinafter the DTPA). The primary issues raised by appellant are as follows: 1) what requirements must be met in order to hold one party responsible for deceptive trade practices committed by another; 2) whether § 17.46(b)(2) is applicable to our fact situation; 3) whether the trial court's findings of fact are sufficient; and 4) whether the trial court erred in its determination of the amount of actual damages. We affirm the judgment of the trial court.

Appellee was a Texas general partnership engaged in the buying and selling of real property as a real estate agency. In 1977, appellee purchased a local franchise from Matchmaker Home Marketing Systems Inc., a national real estate organization. Under the franchise, appellee was to receive certain goods, such as pamphlets and operating manuals, and services, including a "Home Equity Program". Generally, the Matchmaker Home Equity Program was a system under which a residential property listed with a local Matchmaker broker could be submitted for purchase if the property had not otherwise sold during its listing period with the local broker. The property would be purchased at a price

based upon a discounted equity value of the home.

Prior to the time appellee bought the Matchmaker franchise, appellant's involvement and the use of its discretion in accepting submitted properties under the home equity program was not clearly disclosed to appellee. The record contains evidence that representatives from both Potere, Inc., and Matchmaker Home Marketing Systems made statements that the Home Equity program was "guaranteed". The "guaranteed" sale under the Home Equity Program was one of the reasons that appellee obtained the Matchmaker franchise.

After purchase of the franchise, appellee was able to obtain a renewal listing agreement on property owned by Mr. and Mrs. Oscar Newton by stating that if the home did not sell during the listing period, under the Home Equity Program Matchmaker would purchase the property. After the listing agreement was executed on August 25, 1977, appellee prepared and completed various documents relating to the equity purchase of the Newton home. These documents were sent by appellee to Matchmaker Home Marketing Systems which forwarded the papers to Potere. On November 2, the Newtons signed a proposed contract of sale of the property to Potere, as buyer. Potere never signed the proposed contract. On November 7, appellee signed a separate contract with appellant which provided that appellant had the sole option of acquiring properties under the Home Equity Program.

Potere decided not to purchase the Newton residence. The Newtons threatened appellee with litigation over the incident. The property was later purchased by a third party, Shirley McDonald, who had submitted an earnest money contract while Potere was making its decision. The sale to McDonald was at the discounted price under which the property was submitted to Potere. Appellee received no commission on the transaction.

Appellee then filed suit under the DTPA. The original petition named Potere, Inc.; Matchmaker Home Marketing Systems, Inc.; and Southeast Texas Matchmaker, Inc., d/b/a Matchmaker of Houston SMA as defendants. The Matchmaker defendants defaulted and judgment was entered against them. The petition alleged a deceptive trade practice under § 17.46(b)(2). This suit continued against Potere as the remaining defendant. The trial judge ruled that a deceptive trade practice had occurred, actual damages were $7,813.00, that figure should be trebled, and appellee was entitled to recover attorney's fees.

Appellant raises twenty-three points of error. Points of error one, two and three deal with appellee's status as a "consumer" as that term is defined by the DTPA. Between the time appellant filed its brief and the oral argument, the Supreme Court handed down its opinion in *Flenniken v. Longview Bank and Trust Company*, 26 Tex.Sup.Ct.J. 492, 661 S.W.2d 705 (1983). At oral argument, appellant conceded that under *Flenniken* appellee was a consumer. Therefore points of error one, two and three are overruled.

In points of error four, five and six, appellant claims that it cannot be held responsible for any representations made by the Matchmaker defendants. Points of error four and five claim that there was no evidence or insufficient evidence, respectively, to support a finding of joint venture, agency, partnership or other relationship between Potere and the other defendants. Point of error six asserts that as a matter of law appellant cannot be held responsible for the conduct of the Matchmaker defendants. In a related argument, point of error seven states that the trial court erred in admitting evidence on the relationship between the Matchmaker defendants and appellant. We hold that the trial court was correct in admitting the evidence and that there was no error in the decision that appellant can be responsible for the complained of deceptive trade practice.

Appellant claims that the admission of the evidence on the relationship between the defendants was improper because such matters were not raised by appellee's pleadings. Appellant argues that the peti-

tion does not allege any form of group or joint relationship and the evidence on the issue was properly excludable as irrelevant to the issues raised by the pleadings. We disagree.

■ The original petition filed by National Realty Services alleged that Matchmaker and Potere had been acting "in concert". Appellant failed to make a special exception to require appellee to more precisely allege how the defendants had been acting "in concert". The petition gives Potere fair notice that appellant sought to impose liability upon the basis of the relationship between Potere and Matchmaker. The issue of their relationship was sufficiently raised by the pleadings. Appellant's point of error number seven is overruled.

■ Appellant argues that the evidence admitted was not legally or factually sufficient to attribute Matchmaker's conduct to Potere and that as a matter of law vicarious liability under the DTPA does not extend to such relationships. Appellant's argument presumes that the only basis for the trial court's finding of Potere's liability was the acts and representations by the Matchmaker defendants. Appellant fails to mention the testimony that officers of Potere made representations to a local Matchmaker representative that a conforming submission of documents was all that was needed to qualify under the Home Equity Program. In addition, the relationship between appellant and the Matchmaker defendants was sufficient to hold appellant liable for the acts of the Matchmaker defendants. The DTPA provides that a consumer may maintain an action where the use or employment by any person of a false, misleading, or deceptive act or practice constituted a producing cause of actual damages. TEX.BUS. & COMM.CODE ANN. § 17.50(a)(1) (Vernon Supp.1982–1983). "Person" is defined to mean "an individual, partnership, corporation, association, or other group, however organized". TEX.BUS. & COMM.CODE ANN. § 17.-45(3). By use of the phrase "other group, however organized", the legislature has indicated that a proper defendant under the

act is not limited merely to individuals or traditional business organizations. When two or more entities develop a extensive relationship, even though the combination falls short of a traditional business organization, each entity may be held responsible for the acts and representations of the other entity or entities. The Supreme Court decision in *Knight v. International Harvester Credit Corporation,* 627 S.W.2d 382 (Tex.1982) supports this conclusion. *Knight* involved a suit against the commercial seller of a used dump truck and the credit corporation that financed the sale. The suit was brought under the DTPA and the Texas Consumer Credit Act. In dealing with the issue of whether Knight was a proper plaintiff under the DTPA, the Supreme Court addressed the responsibility that one defendant had in its relationship to the other. The court held that there the defendants "were so inextricably intertwined in the transaction as to be equally responsible for the conduct of the sale". *Knight,* 627 S.W.2d at 389. The opinion later stated that the plaintiff "was a 'consumer' as to all parties who sought to enjoy the benefits of that sale". *Knight, Id.*

■ On our facts, Potere and Matchmaker are so inextricably intertwined in this transaction that Potere is liable for the conduct of Matchmaker. The record shows that on December 5, 1974, Matchmaker Home Marketing Systems, Inc., and Potere, Inc., signed a letter agreement of conditions in forming a new corporation. That new corporation was named Matchmaker Home Equities, Inc., and was to be equally owned and controlled by Potere and Matchmaker. Daniel Hanrahan, sole stockholder and president of Potere testified that such agreement never became effective. However, the same parties signed an agreement on December 19, 1975. The 1975 agreement expressly ratified and confirmed the 1974 agreement. Hanrahan signed the 1975 agreement which says it ratifies an agreement that Hanrahan now says never came into existence. In December 1976, an agreement was signed that transferred all

of the stock that Potere, Inc., had in Matchmaker Home Equities, Inc., to Matchmaker Home Marketing Systems, Inc. Despite this transfer of stock, Potere, Inc., was still to provide the funding and had the option to purchase selected properties under the Matchmaker Home Equity program. The 1976 agreement listed several specific conditions. Condition thirteen states that "Potere will not advertise its participation in Matchmaker Home Equities, Inc.". The next listed condition is that "Matchmaker Home Marketing Systems, Inc. and/or Matchmaker Home Equities, Inc., will not use Potere's name in any type of advertising except with its express written prior consent".

Also contained in the record is an August 1977 agreement between appellant, Matchmaker Home Marketing Systems, Inc., and Matchmaker Home Equities, Inc. However, since the copy of that agreement in the record is missing pages 5 and 6, we are unable to determine whether the 1977 agreement differs from the 1976 agreement.

Despite the fact that the 1976 agreement ended the formal co-ownership of Matchmaker Home Equities Inc., by Potere, Inc. and Matchmaker Home Marketing Systems Inc., that agreement did not end but rather increased the relationship between appellant and Matchmaker Home Marketing. Although our facts are different from *Knight*, the relationship between appellant and Matchmaker Home Marketing was such that the parties must be considered to be "inextricably intertwined". For that reason, appellant is liable for any deceptive trade practices committed by Matchmaker. Appellant's points of error four, five and six are overruled.

Points of error eleven, twelve, and thirteen assert that the trial court erred in finding that Potere committed a deceptive trade practice under § 17.46(b)(2) of the DTPA. Points eleven and twelve argue that there was no evidence or insufficient evidence to support such a finding. Point of error thirteen claims that as a matter of law that subsection does not apply to our facts. Section 17.46(b)(2) provides:

> The term 'false, misleading, or deceptive act or practice' includes, but is not limited to, the following acts:
>
> .     .     .     .     .
>
> (2) causing confusion or a misunderstanding as to the source, sponsorship, approval or certification of goods or services.

This subsection deals with deception in the origin, source or endorsement of goods and services. *Prairie Cattle Co. v. Fletcher*, 610 S.W.2d 849 (Tex.Civ.App.—Amarillo 1980, writ dism).

Appellant argues, and we agree, that under § 17.46(c) of the DTPA, as it existed in 1977, relevant decisions from the Federal Trade Commission Act, 15 U.S.C. § 45(a)(1), may be used for guidance, but we disagree with appellant's contentions that § 17.46(b)(2) does not apply as a matter of law and there is neither legally nor factually sufficient evidence to support the trial court's findings of a violation of that subsection.

Appellee sought the Matchmaker franchise, at least in part, to secure the benefits of the Home Equity Plan. The ability to guarantee a sale to a client was a motivating factor in the decision to purchase the franchise. At no time prior to the purchase of the franchise was appellee informed that Potere was actually the provider of the equity purchase service. Appellant argues that appellee could not possibly have been confused as to the sponsorship or source of the service to be provided because of the written contract between Potere and appellee. However, the contract on which appellant puts so much reliance was signed on November 7, 1977, several weeks after appellee bought the Matchmaker franchise. This later contract does not eliminate any confusion as to the source of the home equity purchase service which existed at the time appellee bought the franchise. Appellant's point of error thirteen is overruled.

Sufficient evidence is contained in the record to support the trial court's finding that Potere caused confusion or a misunderstanding as to the source, origin or sponsorship of the service. As stated above, Potere is also liable for any conduct of the Matchmaker defendants which produced the same confusion or misunderstanding. The testimony of appellee shows confusion as to who was to provide the services purchased as part of the franchise. The first clear indication that Potere was to provide the service was not given to appellee until November 7, 1977. An earlier mention of Potere was contained in a letter dated October 24, 1977 from Dominic Rizzo, vice-president of Matchmaker Home Marketing Systems Inc., to appellee. That letter stated that upon receipt of certain documents, Matchmaker would "forward same to Potere for final commitment". Although this letter suggests Potere's involvement, it did not actually state the source of the services appellee was seeking. There is nothing in the record to show that such information was given to appellee when the decision to purchase the franchise was made. In fact, the December 1976 agreement between Potere and Matchmaker Home Marketing Systems Inc., provided that Potere's involvement was not to be advertised. There is no evidence to show that anyone acted to inform appellee who would provide the service. There was sufficient evidence for the trial court to find that a deceptive trade practice under § 17.-46(b)(2) had been committed. Appellant's points of error eleven and twelve are overruled.

Appellant's points of error eight, nine, ten, fourteen, fifteen, sixteen, and seventeen complain of the trial court's findings of fact that other unplead deceptive trade practices had been committed and appellant had breached agreements with or warrantees made to appellee. Since a deceptive trade practice under § 17.46(b)(2) had been plead and supported by sufficient evidence and that deceptive trade practice was sufficient to support the judgment rendered by the trial judge, the error, if any, was harmless. TEX.R.CIV.P. 434. Points of error eight, nine, ten, fourteen, fifteen, sixteen and seventeen are overruled.

Point of error eighteen alleges that the trial court erred in failing to file additional or amended findings of fact upon a proper request by appellant because the findings actually filed, being conclusory, disjunctive and typically stated in the alternative, are insufficient and have prejudiced appellant's ability to contest the findings on appeal. Most of the findings of fact filed by the trial court consist merely of the bare statutory language of subsections of the DTPA. As an example, finding of fact number six stated:

At all times pertinent to this cause of action, plaintiff acquired and/or sought to acquire by purchase and/or lease goods and services from defendants MATCHMAKER HOME MARKETING SYSTEMS, INC., POTERE, INC., and SOUTHEAST TEXAS MATCHMAKER, INC., D/B/A MATCHMAKER OF HOUSTON SMA, including the goods and/or services comprehended by and associated with the "Matchmaker System", which was supposed to include a "Home Warranty Program", a "Home Equity Plan", a "Referral System" and a "Client Follow-up System".

It is undisputed that a trial court is not required to make findings of fact on evidentiary matters as distinguished from controlling matters. *Texas Real Estate Commission v. Hinde*, 627 S.W.2d 537 (Tex. App.—Fort Worth 1982, no writ). However, findings of fact should not merely track applicable statutory language. There is a real danger that findings of fact that are no more than a restatement of statutory provisions which are not tied to any relevant facts will thwart the purpose of the rule requiring findings of fact in a non-jury trial. *State v. Woodville Lumber Company*, 557 S.W.2d 572 (Tex.Civ.App.—Beaumont 1977, no writ). The problem is further complicated when the trial court filed findings of fact concerning other unplead statutory deceptive trade practices and fails to link such findings to any facts.

Findings such as these are of little or no assistance to an appellate court. Although we do not approve of such method of making findings of fact and strongly direct that such practice not be followed in the future, we are not now prepared to reverse and remand this case solely upon the insufficiency of the findings of fact. Appellant's point of error eighteen is overruled.

Points of error nineteen, twenty, twenty-one and twenty-two complain of the amount of actual damages found by the trial judge. Appellant claims there are no pleadings to support the award, there is no evidence or insufficient evidence to support the finding and that as a matter of law appellee was not entitled to have the amount of actual damages trebled based upon the DTPA. Appellant contends that the specific finding of $7,813.00 as actual damages has no support in the pleadings or evidence.

The appellee's original petition alleged that the actual damages were in excess of $1000. Damages evidence included: the price paid for the Matchmaker franchise, expenses and lost commissions, and the amount of time spent on Matchmaker business in general. Appellant complains that the specific dollar amount of damages was "pulled out of thin air". In support, appellant cites *Jim Austin Olds—Cadillac and Toyota Co. v. Gaspard*, 592 S.W.2d 364 (Tex.Civ.App.—Beaumont 1979, no writ). That opinion, in part, states that:

> Tex.R.Civ.P. 301 provides that the judgment of the court "shall conform to the pleadings, the nature of the case proved and the verdict...." Yet, without any explanation in the record, the court pulls a damage figure out of thin air and then trebles such figure in the judgment. 592 S.W.2d at 366.

*Gaspard* involved a trial to a jury in which the jury found actual damages but the trial judge disregarded that finding, found a different amount as actual damages and then trebled that new amount. *Gaspard* is totally inapplicable to our case where the trial judge was sitting as the finder of fact. The issue of the amount of damages to which an injured party may be entitled is an issue within the province of the finder of fact. We find no support for appellant's contention that because the precise amount found as actual damages was not plead and the evidence could support other greater or lesser amounts as damages, the trial court committed error. Points of error nineteen, twenty and twenty-one are overruled.

Appellant's twenty-second point of error is that the trebling of the amount of actual damages was improper. Appellee supported its claim under the DTPA by proving all required elements. Since appellee prevailed upon the DTPA claim, there is no error in the trebling of the actual damages. Point of error twenty-two is overruled.

Appellant's final point of error complains of the award of attorney's fees. Each consumer who prevails under the DTPA shall be awarded reasonable and necessary attorney's fees. TEX.BUS. & COMM.CODE ANN. § 17.50(d) (Vernon Supp.1982–1983). Since appellee prevailed upon the DTPA claim, appellant's point of error twenty-three is overruled.

The judgment is affirmed.