COLONIAL LEASING COMPANY OF NEW ENGLAND, a Corporation, d/b/a Colonial-Pacific Leasing Company, Appellant,

v.

Michael KINERD, Appellee.

No. 11–86–044–CV.

Court of Appeals of Texas, Eastland.

June 18, 1987.

Rehearing Denied July 16, 1987.

Rod E. Wetsel, Nunn, Griggs, Wetsel & Jones, Sweetwater, Temple B. Ingram, Jr., Crowson & Ingram, El Paso, for appellant.

Lance Hall, Sweetwater, for appellee.

DICKENSON, Justice.

This is a case where the consumer [Michael Kinerd] recovered treble damages[1] and attorney's fees under the Deceptive Trade Practices-Consumer Protection Act [TEX.BUS. & COM.CODE ANN. sec. 17.41 et seq. (Vernon Supp.1987)] plus penalties and attorney's fees for usury under TEX. REV.CIV.STAT.ANN. art 5069–1.06 (Vernon 1987). The jury agreed with the consumer that the supplier of the equipment [Radiator Aid, Inc.] and the lessor [Colonial-Pacific Leasing Company[2]] "acted together," and the trial court entered judgment for the consumer against the supplier and the lessor based upon misrepresentations made by the supplier. Colonial-Pacific appeals. We affirm in part, and we reverse and render that the consumer take nothing from the lessor.[3]

Colonial-Pacific's appeal is based upon its contention that it neither authorized nor ratified the misrepresentations made by Radiator Aid, Inc. Colonial-Pacific's position is that it paid Radiator Aid, Inc. $10,000 for equipment [which Kinerd selected] and then leased the equipment to Kinerd for $268.40 plus tax [total of $281.82] per month for a fixed term of 60 months. Kinerd made 33 monthly payments, and Colonial-Pacific claimed it was due the 27 remaining lease payments plus late charges; however, no appeal has been perfected as to the denial of this claim.

The relevant portions of the jury's verdict can be summarized as shown:

3. The jury found that Colonial-Pacific greatly overcharged Mike Kinerd in the transaction in question.

4. The jury found that this overcharging was an unconscionable action.

5. The jury found that Radiator Aid, Inc. and its employees "had apparent authority" from Colonial-Pacific in connection with Mike Kinerd's purchase of the equipment.

6. The jury found that Colonial-Pacific "ratified the sales contract" by Mike Kinerd.

7. The jury found that Radiator Aid, Inc. and its employees "acted together with" Colonial-Pacific in making the sale to Mike Kinerd.

8. The jury found that, prior to the sale of the equipment, Colonial-Pacific by its agents or co-actors: (a) represented that the equipment had uses, characteristics or benefits which it did not have; (b) represented that the equipment was of a particular standard or quality or grade when it was of another; (c) represented that the agreement conferred or involved

---

1. The actual damages were automatically trebled under the provisions of the Deceptive Trade Practices Act which were in effect at the time of the violation. The contract was executed on March 23, 1979.

2. Colonial Leasing Company of New England, a Corporation, d/b/a Colonial-Pacific Leasing Company.

3. Radiator Aid, Inc. defaulted in the trial court and has not appealed the judgment; consequently, the judgment against this defendant is affirmed.

rights, remedies or obligations which it did not have; and (d) caused confusion or misunderstanding as to the quality of the goods or services.

9. The jury found that the acts found in issue eight were a producing cause of damages which adversely affected Mike Kinerd.

14. The jury found that the transaction was a device for accomplishing a loan from Colonial-Pacific to Mike Kinerd.

The trial court rendered judgment by default against Radiator Aid, Inc. and judgment on the verdict against Colonial-Pacific, ordering that Kinerd recover judgment against both of them under the Deceptive Trade Practices Act for his actual damages of $16,409.20, automatically trebled by the court to $49,227.60 plus attorney's fees. The judgment then provides for a recovery against Colonial-Pacific for usury penalties of: (1) $9,353.41 which had been paid by Kinerd; (2) $16,417.80 as a penalty under Article 5069–1.06 for three times the amount of usurious interest contracted for [the trial court treated the total of the 60 payments less the $10,000 which Colonial-Pacific paid Radiator Aid, Inc. as interest]; (3) additional attorney's fees under Article 5069–1.06; and (4) cancellation and forfeiture of the "Contract and Note called a 'lease,' dated March 23, 1979."

Colonial-Pacific has briefed 25 points of error. Kinerd's attorney stated during oral submission of the cause that he is primarily "relying on 'acting together' rather than the other two theories (apparent authority and ratification)." Kinerd takes the position on appeal that the jury's findings that Colonial-Pacific "acted together with" Radiator Aid, Inc. show that the two companies were "inextricably intertwined" within the meaning of *Flenniken v. Longview Bank and Trust Company*, 661 S.W.2d 705 (Tex. 1983); *Knight v. International Harvester Credit Corporation*, 627 S.W.2d 382 (Tex. 1982); *Mytel International, Inc. v. Turbo Refrigerating Company*, 689 S.W.2d 315 (Tex.App.—Fort Worth 1985, no writ); and *Potere, Inc. v. National Realty Service*, 667 S.W.2d 252 (Tex.App.—Houston [14th Dist.] 1984, no writ). We do not agree that the finding that Radiator Aid, Inc. and its employees "acted together with" Colonial-Pacific is sufficient to show that they were "inextricably intertwined" within the meaning of *Flenniken* and *Knight*, supra. More importantly, we hold the concept of being "inextricably intertwined" relates to the standing of a plaintiff to file suit under the Deceptive Trade Practices Act [DTPA], not to a defendant's liability under the Act. The plaintiff must still show that the defendant did something wrongful [either in person or by an authorized or apparent agent] or ratified the transaction with knowledge of the wrongful acts in order to be held liable.

In *Flenniken*, the Court was concerned with the plaintiffs' standing to maintain a private cause of action for treble damages and attorney's fees under the DTPA. The court said, 661 S.W.2d at 707:

> A plaintiff establishes his standing as a consumer in terms of his relationship to a transaction, not by a contractual relationship with the defendant.
>
> \*     \*     \*     \*     \*     \*
>
> If, in the context of a transaction in goods or services, *any person engages in an unconscionable course of action which adversely affects a consumer, that person is subject to liability under the DTPA.* (Emphasis added)
>
> \*     \*     \*     \*     \*     \*
>
> [The plaintiffs] were consumers as to all parties who sought to enjoy the benefits of that transaction.

The defendant bank in *Flenniken* was found to have committed an unconscionable act, and the issue before the Court was whether the plaintiffs had "standing" under the DTPA to sue the wrongdoer for treble damages and attorney's fees.

In *Knight*, the Court was also dealing with the question of "standing" under the DTPA. The Court noted, 627 S.W.2d at 388, that the plaintiff "must qualify as a 'consumer' in order to assert the cause of action." It was within this context that the Court stated, 627 S.W.2d at 389, that the seller and the finance company "were so

inextricably intertwined in the transaction as to be equally responsible for the conduct of the sale." The defendant finance company was a wrongdoer in its own right because it prepared the contract containing the statutorily "prohibited waiver clause." The contract which Colonial-Pacific furnished did not violate any of the laws of this State. See TEX.REV.CIV.STAT.ANN. art. 5069–6.01(f) (Vernon 1987) which applies only to contracts "entered into in this State." The Colonial-Pacific contract was signed by it in Oregon and by Kinerd while he was in Florida. Clearly, the agreement was not entered into in this State; consequently, it does not violate the prohibitions contained in Article 5069–6.01, supra.

■■■ Subsequent to its opinions in *Flenniken* and *Knight,* the Supreme Court's unanimous opinion in *Kish v. Van Note,* 692 S.W.2d 463 (Tex.1985), did not impose liability on a bank under the DTPA even though the plaintiffs had standing as "consumers" under that act because the court pointed out, 692 S.W.2d at 468, that:

> Neither American [Centennial Insurance Company] nor the bank [Bank of Dallas] violated the Deceptive Trade Practices Act.

As we read the Supreme Court's opinions in *Flenniken, Knight,* and *Kish,* the consumer must prove some wrongful act against each party held liable under the DTPA; consequently, we respectfully disagree with the statements in *Mytel* and *Potere,* supra, indicating that all parties which are "inextricably intertwined" are liable for the misrepresentations made by another party.

■■■ We sustain the first point of error [Issue 5] because there is no competent evidence of any "apparent authority" for Radiator Aid, Inc. and its employees to represent Colonial-Pacific. The doctrine of apparent authority requires some proof that the person asserting such authority relied upon conduct by the party to be held responsible which would lead a reasonably prudent person to believe that the actor was an agent of the alleged principal. *Ames v. Great Southern Bank,* 672 S.W.2d 447 at 450 (Tex.1984); *Biggs v.*

*United States Fire Insurance Co.,* 611 S.W.2d 624 at 629 (Tex.1981). Moreover, apparent authority is not available where the claimant has notice of the limitations on the actor's power. *Douglass v. Panama, Inc.,* 504 S.W.2d 776 at 779 (Tex.1974). The document on which Kinerd relies to establish apparent authority clearly states that "neither the supplier [Radiator Aid, Inc.], nor any salesman or other agent of the supplier, is an agent of Lessor [Colonial-Pacific]."

■■■ We also sustain the third point of error [Issue 6] because there is no competent evidence that Colonial-Pacific "ratified the sales contract." Ratification requires proof that the party to be charged knew of the representations made by the actor. *Thermo Products Co. v. Chilton Independent School District,* 647 S.W.2d 726 at 733 (Tex.App.—Waco 1983, writ ref'd n.r. e.).

■■■ The fifth point of error is sustained because Issue No. 7 is not an ultimate issue. The fact that Colonial-Pacific "acted together with" Radiator Aid, Inc. and its employees is just as immaterial as the fact that Kinerd "acted together with" Radiator Aid, Inc. and its employees in this transaction. Kinerd's burden was to prove either actual or apparent authority of the actors in order to hold Colonial-Pacific liable for their actions and misrepresentations. As noted above, "acted together with" is not synonomous with "inextricably intertwined," and even if the terms were synonomous, it would only establish Kinerd's status as a "consumer" with standing to bring a DTPA action against all of the intertwined parties; it would not establish that Colonial-Pacific was a wrongdoer who was liable under the act.

The seventh and ninth points of error [Issues 8 and 9] are sustained because there is no competent proof that any "agents or coactors" had actual or apparent authority to make the representations which produced Kinerd's damages.

Points of error eleven, thirteen, and fifteen [Issues 3, 4, and 14] are sustained because the only basis for finding that

Colonial-Pacific greatly overcharged Kinerd is based upon Kinerd's theory that the supplier of the equipment [Radiator Aid, Inc.] and the Lessor [Colonial-Pacific] were "inextricably intertwined" and were jointly and severally liable for the actions and representations which either party made. That theory has been rejected and discussed hereinabove.

The remaining points of error become immaterial and need not be discussed. Colonial-Pacific's claim for unpaid lease payments has been waived.

The judgment of the trial court is affirmed insofar as it grants Kinerd a recovery from Radiator Aid, Inc. and denies Colonial-Pacific's claim against Kinerd. The remainder of the trial court's judgment is reversed, and this Court renders judgment that Michael Kinerd take nothing from Colonial Leasing Company of New England, a Corporation, d/b/a Colonial-Pacific Leasing Company.

ARNOT, J., not participating.

## ON REHEARING

DICKENSON, Justice.

Appellee's motion for rehearing is overruled. In addition to the authorities cited in this Court's opinion dated June 18, 1987, see *Home Savings Association v. Guerra*, 733 S.W.2d 134, 136 (1987), where the Court said:

> Although a consumer suing under the DTPA need not establish contractual privity with the defendant, he must show that the defendant has committed a deceptive act which is the producing cause of the consumer's damages. (Citations omitted) The DTPA does not attach derivative liability to a defendant based on an innocent involvement in a business transaction. (Citations omitted) To hold a creditor liable in a consumer credit transaction, the creditor must be shown to have some connection either with the actual sales transaction or with a decep-

tive act related to financing the transaction. (Citations omitted)

ARNOT, J., not participating.