Mike KINERD, Petitioner,

v.

COLONIAL LEASING COMPANY, a Corporation, d/b/a Colonial Pacific Leasing Co., Respondent.

No. C–6733.

Supreme Court of Texas.

Concurring and Dissenting Opinion of Justice Gonzalez June 20, 1990.

Opinion on Rehearing Nov. 14, 1990.

Rehearing Overruled Dec. 31, 1990.

Lance Hall, Sweetwater, Philip K. Maxwell, Tim Labadie, Austin, for petitioner.

Temple B. Ingram, Jr., Harold E. Crowson, Jr., El Paso, Roderick E. Wetsel, Sweetwater, for respondent.

## OPINION ON REHEARING

PHILLIPS, Chief Justice.

We grant the motion for rehearing, withdraw our prior opinion and judgment, and substitute the following.

This case involves an action for damages under both the usury statutes, Tex.Rev. Civ.Stat.Ann. arts. 5069–1.01 to –1.12 (Vernon 1987), and the Deceptive Trade Practices—Consumer Protection Act, Tex.Bus. & Com.Code Ann. §§ 17.41–.63 (Vernon 1987)

(the "DTPA"). After a jury trial, the trial court rendered judgment for the plaintiff awarding separate damages for each theory of recovery. The court of appeals reversed and rendered judgment that the plaintiff take nothing. 733 S.W.2d 671 (1987). We hold that there is evidence to support plaintiff's recovery under both the DTPA and the usury statutes. Therefore, we reverse the judgment of the court of appeals, render judgment for Kinerd in part and remand in part to that court for further proceedings.

### Facts

After a personal inspection, Mike Kinerd decided to purchase some radiator repair equipment manufactured by Radiator Aid, Inc. Radiator Aid told Kinerd that he could buy the unit directly from it for cash or from Colonial Leasing Company under an arrangement involving payments over time. Kinerd decided to make the purchase from Colonial. After Radiator Aid sold the equipment to Colonial for $10,000, Colonial entered into an agreement entitled "Lease" with Kinerd.

Under the terms of this agreement, Kinerd was obligated to make sixty monthly payments of $268.40 each plus tax,[1] or $281.82, totaling $16,104.00 plus tax, or $16,909.20, to Colonial. The agreement was noncancellable; prepayment was forbidden; and in the event of a default, the total sum of all monthly payments would immediately become due. After all sixty payments had been made, Kinerd would have the right to "purchase" the equipment for one dollar. Although it did not sign the "lease," Radiator Aid facilitated the transaction by obtaining credit information from Kinerd for Colonial, supplying Colonial's documents to Kinerd and receiving Kinerd's initial deposit and payment on behalf of Colonial.

In time, Kinerd became dissatisfied with the equipment. After making over half the monthly payments totalling $9,353.41 to Colonial, Kinerd brought suit against both Radiator Aid and Colonial. He alleged vio-

---

1. Sales tax of five percent on $16,104 was added to the "lease." Kinerd was required to pay this tax to Colonial in sixty equal installments over the five year term of the agreement.

lations of the Deceptive Trade Practices Act as to both defendants and usury as to Colonial only.

Radiator Aid failed to appear, and Kinerd took a default judgment against it. Kinerd's claims against Colonial were tried to a jury which found both DTPA and usury violations. The trial court rendered judgment for Kinerd on the jury's verdict, and Colonial appealed. The court of appeals reversed the judgment of the trial court, holding that there was no evidence to sustain the jury's findings under either theory. 733 S.W.2d at 674–75. Kinerd appeals that judgment.

### *Usury*

Article 5069 controls the amount of interest lenders may legally charge in this state. The statute is divided into three subtitles. The first deals with loans and contains general provisions and definitions on interest. Tex.Rev.Civ.Stat.Ann. arts. 5069–1.01 to –1.12 (Subtitle One—Interest). The remaining two subtitles pertain to the regulation of consumer loans, certain kinds of credit sales and. consumer protection. *Id.* arts. 5069–2.01 to –8.06 (Subtitle Two—Consumer Credit) and arts. 5069–9.01 to –51.17 (Subtitle Three—Consumer Protection).

The court of appeals did not discuss Kinerd's judgment for usury penalties except to hold that the transaction was not a retail installment sale subject to regulation under Subtitle Two—Consumer Credit. 733 S.W.2d at 674. While we agree with this conclusion,[2] it does not resolve the usury question in this case. Kinerd does not claim that his purchase was a retail installment sale under Subtitle Two. Instead, he claims that the transaction was subject to the provisions of Subtitle One, which generally sets the maximum rates of interest that may be contracted for, charged or received in this state. Tex.Rev.Civ.Stat. Ann. arts. 5069–1.01 to –1.12. Colonial re-

sponds that the usury statute does not apply because the transaction did not involve interest charges, but rather was a credit sale for a time price differential. Colonial maintains that the difference between the amount it paid Radiator Aid for the equipment, $10,000, and the amount for which it resold the equipment, $16,104, was merely its profit on the transaction and cannot be considered interest under the doctrine of time price differential. Kinerd responds that the transaction failed to meet the requirements for protection under this doctrine and that the $6,104 difference is therefore interest.

The issue then is whether Colonial's sale of the equipment to Kinerd was a credit sale for a time price differential. If it was, the transaction does not involve interest and cannot be considered usurious. This follows from the statutory definitions of "usury" and "interest." Usury is defined as "interest in excess of the amount allowed by law," and interest is defined to exclude "any time price differential however denominated arising out of a credit sale." *Id.* art. 5069–1.01(a), (d).

■ Although article 5069 recognizes the time price differential, it did not create this exception to the usury laws. *Id.* art. 5069–1.01(a); *see also* Sheehan & Smyer *The Texas Consumer Credit Code* in 2 CREDITORS RIGHTS IN TEXAS § 23.92 at 1074 (2d Ed.1981). Time price differential is a judicial doctrine that we can trace to the English common law. *Beete v. Bidgood,* 7 B. & C. 453, 108 Eng.Rep. 792 (1827); *Floyer v. Edwards,* 1 Cowp. 112, 98 Eng. Rep. 995 (1774); *see also Hogg v. Ruffner,* 66 U.S. (1 Black) 115, 118–19, 17 L.Ed. 38 (1861). Under the time price doctrine, if certain requirements are met and the transaction is not designed to circumvent the usury laws, a merchant may sell merchandise at a higher price for credit than for cash and the price difference is not subject

---

**2.** The court of appeals notes that the agreement between Colonial and Kinerd was executed in another state and hence was not subject to the provisions of chapter six of Subtitle Two—Consumer Credit. *See* Tex.Rev.Civ.Stat.Ann. art. 5069–6.01(f). Additionally, this chapter does

not apply because the goods sold by Colonial to Kinerd were for commercial purposes, *see id.* art. 5069–6.012(a), and Colonial did not meet the definition of a retail seller under this chapter, *see id.* art. 5069–6.01(d).

to the law of usury. *Rattan v. Commercial Credit Co.*, 131 S.W.2d 399, 399–400 (Tex.Civ.App.—Dallas 1939, writ ref'd). The practical effect to the purchaser may be the same as a loan, but the rationale for the distinction is that laws on usury limit only the compensation for the use, forbearance, or detention of money, but do not limit the prices at which a merchant may sell its goods. *Standard Supply & Hardware Co. v. Christian–Carpenter Drilling Co.*, 183 S.W.2d 657, 661 (Tex.Civ.App.—Galveston 1944, writ ref'd). Although the legislature has acted to regulate certain transactions involving time price differentials,[3] such legislation is not applicable to the present commercial sale of equipment. We must therefore apply the common law to determine whether the transaction between Kinerd and Colonial qualified as a bona fide credit sale under a time price differential. *See Rotello v. International Harvester Co.*, 624 S.W.2d 249, 250–51 (Tex.App.—Dallas 1981, writ ref'd n.r.e.).

■ Application of the time price doctrine requires proof of three elements:

1. The seller clearly offered to sell the goods for both a cash price and a credit or time price;

2. The purchaser was aware of the two offers; and

3. The purchaser knowingly chose the higher time price.

*Rattan*, 131 S.W.2d at 399–400; *Commercial Credit Equip. Corp. v. West*, 677 S.W.2d 669, 675 (Tex.App.—Amarillo 1984, writ ref'd n.r.e.); *Weis v. Taylor*, 613 S.W.2d 332, 334 (Tex.Civ.App.—Fort Worth 1981, writ ref'd n.r.e.). Furthermore, even when these elements are met, if a party presents evidence indicating that the transaction is actually a device to avoid the

usury laws, a question of fact is raised for the jury. *See Butler v. Holt Mach. Co.*, 741 S.W.2d 169, 173 (Tex.App.—San Antonio 1987, writ denied) (noting that a transaction designed to circumvent the usury laws "is not saved by any attempted difference between a claimed 'cash' price and a claimed 'credit' price"). Following an instruction that correctly defined a time price differential, the jury was asked if Colonial's mark up or profit on the resale of the equipment to Kinerd was a time price differential.[4] The jury answered no. Colonial must therefore establish as a matter of law that its credit sale to Kinerd was a time price differential, and this it cannot do.

■ The record strongly indicates that Colonial's role in this transaction was simply to finance Kinerd's purchase of the equipment. Radiator Aid advised Kinerd that he could purchase the equipment on credit, but that this transaction would be through Colonial. Although Radiator Aid offered Kinerd a cash price, no evidence indicated that Colonial ever offered to sell the equipment for cash; hence, Colonial cannot establish as a matter of law that its sale of the equipment to Kinerd was for credit under a time price differential.

In addition to rejecting time price differential, the jury further determined that the transaction was "a device for accomplishing a loan." The jury found the principal of this loan to be $10,000. The jury further found that, including taxes and other charges, Kinerd promised to pay Colonial $16,909.20 for the equipment.

■ Applying these findings to the terms of the "lease" agreement, we calculate that the agreement between Colonial and Kinerd incorporated a rate of interest in excess of twenty per cent per annum.[5]

---

3. *See, e.g.,* Tex.Rev.Civ.Stat.Ann. arts. 5069–6.-01(h) (retail installment sales) and 5069–7.01(i) (motor vehicle installment sales).

4. Jury Question 16 provided:
   Do you find from a preponderance of the evidence that the difference between what Colonial–Pacific paid for the equipment and what Colonial–Pacific charged Plaintiff was a time-price differential?
   You are instructed that a "time-price differential" arises when a seller offers a purchaser one

specific price for cash and another higher price for payments over time, and the purchaser is aware of the two offers and the purchaser knowingly chooses the higher "time price."

5. The lease provided for the payment of sixty monthly installments of $268.40, excluding taxes. Amortizing a principal of $10,000 over this payment schedule yields an interest rate of 20.62%.

At the time of this transaction, parties to a written contract could agree to a maximum rate of interest of ten per cent per annum.[6] Kinerd is therefore entitled to the statutory penalties for usury because Colonial contracted for a rate of interest in excess of twice that allowed by law. Tex.Rev.Civ. Stat.Ann. art. 5069–1.06(1), (2).

### Deceptive Trade Practices Act

The court of appeals also reversed the DTPA judgment against Colonial, holding that Colonial was not responsible for the actions or misrepresentations of Radiator Aid. Kinerd argues, however, that Colonial is liable under section 17.50 of the DTPA for its own conduct in grossly overcharging Kinerd, thereby engaging in an unconscionable action or course of action. *See* Tex.Bus. & Com.Code Ann. § 17.50(a)(3). The court of appeals did not discuss this point.

The jury found that Colonial sold the equipment to Kinerd for $10,000.00, while the actual value of the goods received was only $2,000, and that Colonial had "greatly overcharged Mike Kinerd in the transaction in question." The jury also found that such action was unconscionable. There is some evidence to support these findings. The uncontroverted testimony of Kinerd, a lifelong mechanic and service station operator, was that the equipment provided was obsolete and had a value of only $2,000.

Colonial argues, however, that it was inconsistent for the jury to find that Colonial both financed the sale of the equipment and greatly overcharged Kinerd in the sale. Colonial submits that if its purchase of the equipment is interpreted to be a financing arrangement for Kinerd, then Kinerd has received full value from Colo-nial, i.e., $10,000, because that is what Colonial paid Radiator Aid for the equipment.

■ Colonial's argument might have merit if it had acted only as a lender in this transaction. Colonial, however, also sold the equipment to Kinerd. Radiator Aid may have greatly overcharged Colonial in the first sale of the equipment, but such fact does not diminish the jury's finding that Colonial in turn greatly overcharged Kinerd when it resold the equipment. The court instructed the jury that Colonial was the seller of the equipment,[7] and the jury found that Colonial financed the sale. Given these circumstances, there is no conflict in finding that Colonial both committed a deceptive trade practice when it sold the equipment and charged a usurious rate of interest when it financed that sale. Further, the damages arising from these separate acts do not overlap because Kinerd's usury and DTPA claims cover different aspects of the transaction.

■ Colonial, however, also argued in the court of appeals that the evidence was factually insufficient to support a finding that it had engaged in an unconscionable action or course of action. As noted, the court of appeals reversed the DTPA judgment without addressing these findings. Because we lack jurisdiction over this question, we must remand to the court of appeals for it to consider the factual sufficiency of the evidence. *Putnam v. Missouri Valley, Inc.*, 616 S.W.2d 930, 931 (Tex.1981).

### Judgment

We reverse the judgment of the court of appeals. The judgment of the trial court,

---

**6.** Article 5069–1.04 of the Revised Civil Statutes formerly provided:

> The parties to any written contract may agree to and stipulate for any rate of interest not exceeding ten percent per annum on the amount of the contract; and all other written contracts whatsoever, except those otherwise authorized by law, which may in any way, directly or indirectly, provide for a greater rate of interest shall be subject to the appropriate penalties prescribed in this Subtitle.

Interest—Consumer Credit and Consumer Protection, ch. 274, § 2, 1967 Tex.Gen.Laws 609, *amended by* Act of May 8, 1981, ch. 111, § 5, 1981 Tex.Gen.Laws 271, 274–80.

**7.** Without objection, the trial court instructed the jury that "although the agreement between Mike Kinerd and Colonial Pacific signed by Mike Kinerd on March 23, 1979, is called a lease, the transaction is actually a sale and the instrument is a security agreement, securing a sale of goods from Colonial Pacific to Mike Kinerd".

however, also contains errors in the computation of damages. We must therefore recalculate the sum Kinerd is entitled to recover.

■ For Colonial's usury violation, Kinerd is entitled to (1) $10,067.31, being three times the usurious interest of $3,355.77 ($6,104.00—$2,748.23), and (2) $9,000 in attorney's fees awarded by the trial court. *See* Tex.Rev.Civ.Stat.Ann. art. 5069–1.06(1). Additionally, because the rate of interest provided in the agreement between Colonial and Kinerd was more than double the maximum rate of interest allowed for written contracts at that time, Colonial must forfeit, as an additional penalty, "all principal as well as interest and all other charges." *Id.* art. 5069–1.06(2). Kinerd therefore is entitled to a refund of the $9,353.41 collected by Colonial under the "lease" and to cancellation of his debt under that agreement. We reverse the judgment of the court of appeals on Kinerd's usury claim, cancel Kinerd's remaining obligations under this transaction and render judgment for him in the amount of $28,420.72.

■ Subject to our remand to the court of appeals, we also calculate the damages due Kinerd under the Deceptive Trade Practices Act. Kinerd's actual damages are $9,500—Kinerd's out-of-pocket expenses of $1,500, as found by the jury, plus the $8,000 difference between the value of the equipment as represented, $10,000, and the value of the equipment as received, $2,000. At the time of this sale, the Deceptive Trade Practices Act authorized the recovery of treble damages. Deceptive Trade Practices—Consumer Protection Act, ch. 143, § 1, 1973 Tex.Gen.Laws 322, 327, *amended by* Act of Aug. 27, 1979, ch. 603, § 4, 1979 Tex.Gen.Laws 1327, 1330. Therefore, under the version of the DTPA then applicable, Kinerd is entitled to $46,500, which includes trebled damages of $28,500, plus the attorney's fees awarded by the trial court under the DTPA of $18,-

000. Because the factual sufficiency of the evidence remains for decision by the court of appeals, however, this recovery is subject to our remand.

We reverse the judgment of the court of appeals and render judgment for Kinerd on his claim of usury, but remand the cause to the court of appeals for consideration of the remaining DTPA issue. If that court holds that sufficient evidence exists to support the verdict, Kinerd should also be awarded DTPA damages.

GONZALEZ, J., concurring and dissenting.

GONZALEZ, Justice, concurring and dissenting.

I agree with the court that there is some evidence to support a judgment for Kinerd under the DTPA. However, I disagree with the court that the record before us supports a recovery under both the DTPA and usury statutes. For these reasons, I concur in part and dissent in part.

Kinerd complains that the court of appeals erred in holding that there is no evidence that Colonial committed usury. 733 S.W.2d at 674. He asserts that his agreement with Colonial was a "finance lease," or, in essence, a loan of $10,000.00, which is the price that Colonial paid Radiator Aid for the equipment. Kinerd also characterizes the amount of Colonial's anticipated profits, $6,908.20, as interest on the loaned amount.[1] Colonial, on the other hand, contends that the transaction was a sale. A sale is not subject to our usury laws, regardless of price. *Rattan v. Commercial Credit Co.*, 131 S.W.2d 399 (Tex.Civ.App.—Dallas 1939, writ ref'd).

In my opinion, the transaction in question is not subject to the usury laws for at least two reasons. First, the agreement was a sale. The trial court even instructed the jury, without objection, that the transaction was a sale.[2] Generally, a seller has

---

**1.** In essence, Kinerd asserts that this was a schizophrenic transaction. To support his claim for usury, he contends that the transaction was a loan of $10,000. On the other hand,

to support his DTPA claim Kinerd characterizes the transaction as a sale of goods.

**2.** The jury instruction was as follows: "You are instructed that although the agreement between

the right to name the price at which the seller is willing to sell. Here, Colonial agreed to sell equipment that it had purchased for $10,000.00 to Kinerd for $16,-909.20, plus an additional $1.00 at the end of the five-year period. Kinerd paid sales taxes on the full $16,909.20. Since Kinerd had no right to prepay any monthly installments or obtain a discount in any manner, and since he was entitled to obtain title only at the conclusion of the payment period, it is clear to me that Colonial and Kinerd entered into a sale agreement whereby Kinerd agreed to pay $16,910.20 over a 60–month period.

Because the transaction was a sale, it was incumbent on Kinerd to show that credit was extended. A loan of money is an essential element of any usurious transaction. *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex.1982).

Kinerd points to the jury finding set out in footnote number 3. There is no evidence in the record to support this finding. Pursuant to the parties' agreement, Kinerd promised to make 60 payments of "$268.40 + 5% Texas [sales] Tax of $13.42 for a total of $281.82." All that the agreement shows is that the total consideration for the equipment was $16,909.20. The transaction in question says nothing about principal, interest or any kind of financing charge. The agreement itself is not evidence of a loan of money.

Nor do the circumstances surrounding the transaction show a loan of money. Colonial sold radiator equipment to Kinerd; it did not extend money to Kinerd so that he could then make that purchase. There is nothing in the record about any discussions between Kinerd and Colonial regarding the nature of this transaction. All discussion regarding the transaction took place between Kinerd and Radiator Aid. Even if Colonial had offered Kinerd the property

for a cash price of $10,000.00, which it did not, the charges would merely be an exercise of time-price differential, which is not usurious. Tex.Rev.Civ.Stat. art. 5069–1.-01(a). There is no evidence that this transaction was a loan.

Second, even if this transaction can be characterized as a loan, there is no evidence of how much was loaned (principal to be repaid) and at what interest rate.[3] The critical element of a claim of usury is that a loan was given on usurious terms. *Holley*, 629 S.W.2d at 696. The issue submitted to the jury and answered favorably to Kinerd was that he promised to pay Colonial $16,-909.20 "for the use or detention" of $10,000 or less. Presumably this figure was chosen because of the $10,000.00 sales price from Radiator Aid to Colonial. However, in order to uphold the jury's finding on this issue, we would have to hold that Colonial's $10,000.00 purchase price was also its *selling price*. Generally, a seller has the right to name the sales price. There is *not one shred of evidence* in the record from which to determine what portion of the $6,909.20 is Colonial's "profit" as opposed to its "interest charge." Without some evidence of a differentiation between principal and interest, it is impossible to establish that the transaction was usurious.

For these reasons, I would affirm the judgment of the court of appeals as to usury and reverse and remand the DTPA portion of the judgment to the court of appeals for a sufficiency of the evidence review.

Mike Kinerd and Colonial Pacific signed by Mike Kinerd on March 23, 1979, is called a lease, the transaction is actually a sale and the instrument is a security agreement, securing a sale of goods from Colonial Pacific to Mike Kinerd."

**3.** The DTPA damages awarded by the trial court are based upon the jury's finding that Kinerd

promised to pay Colonial $16,909.20 for the radiator equipment. In computing Kinerd's DTPA damages, the trial court treated the entire amount ($16,909.20) as the consideration paid. If the entire amount is "consideration paid," then, by definition, Kinerd paid no usurious interest.