**HAYWOOD, JORDAN, McCOWAN OF DALLAS, INC., Appellant,**

v.

**BANK OF HOUSTON, Appellee.**

No. A14–91–01276–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 2, 1992.

Rehearing Denied July 30, 1992.

---

Norman M. Bonner, Houston, for appellant.

Jennifer S. Wilson, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and SEARS and ELLIS, JJ.

## OPINION

ELLIS, Justice.

This is an appeal from a take nothing judgment on a conversion suit, pursuant to TEX.BUS. & COM.CODE ANN. § 3.419 (Vernon 1968), filed against the Bank of Houston, appellee-bank, for its acceptance of six checks as a depositary bank which were allegedly endorsed by an unauthorized agent of appellant. Trial was to a jury. Appellant argues in four points of error that the evidence was legally and factually insufficient to support the jury's answers supporting the trial court's judgment. Appellee files two cross-points contending the trial court erred in failing to admit mitigating evidence regarding appellant's use, in part, of the proceeds of the six checks and in failing to submit a jury question concerning appellant's constructive receipt of the proceeds. We affirm.

In 1986, appellant was awarded contracts for the design of five elementary schools in the Dallas Independent School District (DISD). Willie C. Jordan, president of Haywood, Jordan & McCowan of Houston and an affiliate of appellant was instrumental in the negotiation of these contracts. Fred Alexander, appellant's corporate representative at trial, testified Willie Jordan was the "Jordan" in apellant's name, Haywood, Jordan, McCowan of Dallas, Inc. Jordan used his prior business contact and excellent working relationship with Project Management Systems (PMS), the DISD project general contractor, to secure the award of these contracts on behalf of appellant.

Alexander testified the method by which appellant received funds from PMS for the DISD project. He testified that by virtue of a method Jordan set up, the checks issued for DISD were issued by PMS in

Houston. He testified that he and Jordan agreed Jordan would pick up the checks PMS issued in Houston and bring them to Dallas for deposit in the Dallas account. Alexander testified Jordan followed this procedure two or three times a week.

In December of 1986, November of 1987 and May of 1988, Jordan received checks payable to appellant totalling $50,373.79. Instead of delivering the checks to Dallas, however, appellant endorsed the checks and deposited them in his account at appellee-bank. These checks were endorsed as follows:

*December 1986:*
Haywood Jordan McCowan of Dallas, Inc. by William Jordan Jr.

*November 1987:*
Haywood Jordan McCowan of Dallas, Inc.
by Willie C. Jordan
Paid to the Order of
Haywood Jordan McCowan of Houston
Willie C. Jordan
Haywood Jordan McCowan of Houston, Inc.

*May 1988:*
Haywood Jordan McCowan of Dallas, Inc.
by Willie C. Jordan
Project Architect of Schools DISD

Alexander did not have any complaint regarding these checks. He stated that prior to March of 1988, appellant received all *proceeds* of the money due to them on the DISD jobs, but was aware that the actual checks from PMS were not being received. Alexander testified that he saw cashier's checks from Jordan's bank, appellee-bank, before March of 1988 made payable to consultants, or which he believed were sent directly to consultants. Alexander knew Jordan did his banking at appellee-bank, that Jordan had taken the checks received from PMS and purchased cashier's checks at appellee-bank. Nevertheless, Alexander testified it never occurred to him that Jordan deposited the checks in appellee-bank and he still did not know whether the checks were deposited at the time of trial.

The six checks sued upon bore endorsements almost identical to those that appeared above, and were accepted for deposit by appellee-bank ("Haywood, Jordan & McCowan of Dallas, Inc. by Willie C. Jordan"). Ernest Hogue, the designated representative of appellee-bank, had a 10 year banking relationship with Jordan. He testified that he accepted the checks from Jordan because he thought Jordan was authorized to endorse the checks. Part of the reason Hogue thought Jordan was authorized was because he received no notice of dishonor or question on similar checks, specifically the three checks mentioned above (December 1986; November 1987; and May 1988). In addition, Hogue received from Jordan a copy of the corporate resolution from the Dallas bank for appellant's account showing Jordan was a required signatory on the account (Appendix 1), a copy of the signature card from the Dallas bank showing his signature on the account (Appendix 2) and copies of contracts between PMS and appellant regarding the DISD job signed by Jordan and Alexander. Fred Alexander identified the contracts as the contracts appellant had with DISD. There were several places where either Jordan or both Fred Alexander signed the contracts on behalf of Haywood, Jordan, McCowan of Dallas, Inc. (Haywood–Dallas). Alexander admitted that both he and Jordan signed the contracts with PMS. On at least one acknowledgement within one of the contracts, admitted as defendant's exhibit 13, the signatures appeared as follows:

Haywood Jordan McCown of Dallas, Inc.
SECOND PARTY (ARCHITECT–ENGINEER)
By: (signed by Willie Jordan)
(PRINCIPAL) (PARTNER) (OFFICER)
(signed by Fred Alexander)
(attached as Appendix 3)

On a page entitled, "exhibit 4" which was included within the contract, Willie Jordan signed as president. (attached to this opinion as Appendix 4). Concerning the way

Fred Alexander signed the contracts, Alexander testified as follows:

Q: [by appellee's attorney] You never indicated on any of the documents that you have just been marked that you were president of Haywood–Jordan–McCowan Dallas, Inc. did you, Mr. Alexander

A: On any of these documents?

Q: That's correct.

A: I would have to look at them again to refresh my memory.

Q: That's fine.

A: I don't recall that I did, though. *No, I did not sign as president.* There was not a title that was asked for on the signatures.

(emphasis added). In addition to noting the way the signatures appeared on the contracts, Hogue noted that not only was Jordan's signature the *first* signature on the signature card for appellant's bank account in Dallas, but was the one *required* signature on all withdrawals from the Dallas account. Hogue, therefore, believed Jordan possessed the necessary authority to endorse and deposit checks issued to appellant.

At trial, several questions were submitted to the jury, which were later incorporated in the trial court's take nothing judgment. These questions were:

### Question No. 1:

Did Defendant Bank of Houston convert the six checks belonging to Plaintiff Haywood, Jordan, McCown of Dallas, Inc?

Answer: No

### Question No. 4:

Do you find that Willie C. Jordan, Jr. was acting without implied or apparent authority in endorsing the checks in question?

Answer: No

### Question No. 5:

Do you find that Haywood, Jordan, McCowan of Dallas, Inc. by its negligence substantially contributed to the making of an unauthorized signature, if any, on the checks in question?

Answer: Yes

### Question No. 6:

Do you find that Bank of Houston acted in good faith and in accordance with the reasonable commercial standards applicable to its business in accepting the checks in question for deposit?

Answer: Yes

### Question No. 7:

Do you find that Bank of Houston was a holder in due course with respect to the checks in question?

Answer: Yes

■■■ In point of error one, appellant argues that the jury's answers to questions no. 1 and 4 are against the great weight of the evidence. In reviewing the factual sufficiency of the evidence to support the jury's answers to questions 1 and 4, wherein appellant bore the burden of proof, the proper standard of review is whether the jury's finding was "against the great weight and preponderance of the evidence." *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983). In this type review, we must consider and weigh all of the evidence, both the evidence supporting and contrary to the judgment. *Plas–Tex, Inc. v. United States Steel Corp.,* 772 S.W.2d 442, 445 (Tex.1989). If the jury finding is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust, the point should be sustained, regardless of whether there is some evidence to support it. *Watson v. Prewitt,* 159 Tex. 305, 320 S.W.2d 815, 816 (1959) (per curiam); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951) (per curiam).

■■■ TEX.BUS. & COM.CODE ANN. § 1.201(43) (Vernon 1968) defines an unauthorized indorsement as one made "without actual, implied or apparent authority." In the present case, there is no dispute that some type of agency relationship existed between appellant and Jordan. The disputes concerns the type and extent of au-

thority Jordan was given. Actual authority includes express and implied authority. *Behring Intern. v. Greater Houston Bank*, 662 S.W.2d 642, 649 (Tex.App.—Houston [1st Dist.] 1983, writ dism'd by agreement). Express authority exists where the principal makes it clear to the agent that he wants the act under scrutiny to be done. *City of San Antonio v. Aguilar*, 670 S.W.2d 681, 683 (Tex.App.—San Antonio 1984, writ dism'd) (citing H. Reuschlein & W. Gregory, AGENCY AND PARTNERSHIP, sec. 14 (1979)). Implied authority exists where there is no proof of express authority, but appearances justify a finding that in some manner the agent was authorized to do what he did. *Id.*

■ Appellant points to the testimony of Fred Alexander to support the proposition that Jordan had no authority at all to endorse the checks. Fred Alexander testified that Jordan's only authority with respect to the checks was to pick them up from PMS in Houston and to bring them to appellant in Dallas. He testified that he did not know what Jordan was doing with the six checks in dispute until he got photocopies of the checks back from PMS. He did admit, however, that he received cashier's checks in '86 and '87, other than the six checks in question, drawn from the Bank of Houston which were proceeds from the checks Jordan picked up from PMS. This suggests Alexander was well aware that Jordan endorsed checks in order to convert the proceeds into cashier checks. Alexander testified that Jordan sent cashier checks to his office that were payable for whatever they were issued for, including consultant's fees. Alexander testified, "given the fact that we eventually received all of the funds, it just frankly never occurred to me that something not quite right was going on at this point." This evidence suggests that Alexander had given Jordan, at the very least implied authority.

Other evidence in addition to Alexander's testimony suggests Jordan may even have had express authority. Jordan was the "Jordan" in appellant's corporate name, Haywood, Jordan, McCowan of Dallas. He testified that he thought he was an officer

of Haywood–Dallas, because of representations that he would be made an officer of a future corporation when he was asked to negotiate a contract with Dallas Independent School District (DISD). As illustrated by a portion of the DISD contract, Appendix–3, Jordan signed as a "(Principal) (Partner) (Officer)" above Fred Alexander's name. Also illustrated in the same contract, Appendix–4, Jordan signed as president. It may be inferred that Alexander, the representative who testified against Jordan's authority, certainly was aware of the way Jordan signed in both instances since he signed the contract as well. In addition, the bank card, entitled "Certificate of Corporate Resolutions," Appendix–1, which was presented to appellee-bank, shows that Jordan was a *required* signator among Fred Alexander and Norcell D. Haywood for Haywood–Dallas' corporate account in Dallas. This further substantiates that the representations made to Jordan regarding the promise for an official capacity in Haywood–Dallas were true. Nevertheless, even if Jordan was not acting as an officer, and conferred with express authority to endorse the checks, he certainly was acting with implied authority based on the needs of Haywood–Dallas for Jordan's assistance in the contract with DISD. Jordan indicated that part of the reason he was asked to make the deal with DISD is because Fred had some problems with Dallas Independent School District and because of his personal connections with PMS.

■ In addition, there was sufficient evidence of apparent authority. Apparent authority arises either from a principal knowingly permitting an agent to hold himself out as having authority or by principal's actions which lack such ordinary care as to clothe an agent with indicia of authority, thus leading a reasonably prudent person to believe that the agent has the authority she purports to exercise. *Ames v. Great Southern Bank*, 672 S.W.2d 447, 450 (Tex.1984). A prerequisite to finding apparent authority is evidence of conduct by the principal relied upon by the party asserting estoppel which would lead a reasonably prudent person to believe an agent had authority. *Id.* In the present case, as

already discussed, Fred Alexander jointly signed the DISD contract with Jordan, and Jordan signed both as a principal and president in this contract. Further, Alexander signed a bank card for Haywood–Dallas' corporate account which required that Jordan always be the required signators. Further, Haywood–Dallas never complained about Jordan's endorsement of checks Jordan received from PMS payable to Haywood–Dallas in December of 1986, November of 1987 and May of 1988. These checks were indorsed almost identical to the checks being sued upon in the present case. In conclusion, we find there was overwhelming evidence to support the jury's negative response to jury question 4. Appellant failed to prove an essential element in appellant's case for conversion, namely that there was a forged endorsement. See TEX.BUS. & COM.CODE ANN. § 3.419(a)(3) (Vernon 1968) (Vernon 1968). It also follows that the jury's conclusion that appellee did not convert the six checks in response to question no. 1 was supported by the evidence since they found that Jordan was not without authority. The jury's responses to questions 1 and 4 were not manifestly unjust. Appellant's point of error one is overruled.

Because the evidence was sufficient to support the jury's finding that the endorsement was not unauthorized, and no conversion took place, we need not address appellant's other points of error concerning the jury's answers to questions no. 5, 6 and 7 which concern defenses to a conversion suit. Question 5 addresses the defense issue of appellant's negligence in contributing to an unauthorized signature pursuant to TEX.BUS. & COM.CODE ANN. § 3.406 (Vernon 1968). Question 6 addresses a bank's defense to conversion pursuant to TEX.BUS. & COM.CODE ANN. § 3.419(a)(3) (Vernon 1968). Question 7 addresses the defense of holder in due course status of TEX.BUS. & COM.CODE ANN. § 3.305 (Vernon 1968). Since jury questions 1 and 4 are supported by the evidence and the jury found no conversion took place, appellant's points of error two through four concerning the issues of defenses to conversion need not be addressed. Appellant's points of error two, three and four are overruled. In addition, we need not consider appellee's cross-points since we find no error in the trial court's judgment.

Accordingly, the judgment of the trial court is affirmed.

APPENDIX - 1

**MBank** Preston
A Momentum Bank

**Certificate of
Corporate Resolutions**

I, Norcell D. Haywood, Secretary of Haywood Jordan
McCowan of Dallas, Inc. (the "Corporation") incorporated under the

laws of the state of Texas do hereby certify that I am keeper of the records and the minutes of the proceedings of the Board of Directors of the Corporation, that I am authorized by the Board of Directors and Bylaws of the Corporation to execute and deliver this Certificate and that on the

2nd day of September, 19 86, there was held a meeting of the Board of Directors of the Corporation, which was duly called and held in accordance with law and the Bylaws of the Corporation, at which meeting a quorum of the Directors was present and acting throughout, and that at such meeting the following resolutions were duly and legally adopted:

RESOLVED, That MBank Preston, hereinafter called "Bank" is hereby designated as a depository of the Corporation, and that an account or accounts shall be established in the name of the Corporation with Bank, under and subject to the rules and regulations as from time to time may be prescribed by Bank, wherein may be deposited any of the funds of the Corporation whether represented by cash, checks, notes or other evidences of debt which deposit shall be subject to withdrawal by items drawn on Bank bearing on behalf of the Corporation

**\*ONE SIGNATURE MUST BE THAT OF**

the signatures of any ___2\*___ (no required) of the following **WILLIE C. JORDAN JR.**

WILLIE C. JORDAN JR. _____
FRED ALEXANDER _____
NORCELL D. HAYWOOD _____

_____ _____

or bearing any of their facsimile signatures if applicable.

FURTHER RESOLVED, That Bank may honor and charge to Corporation any checks, drafts or orders, regardless of by whom or by what means the actual or purported facsimile signature may have been affixed thereto, as long as such signature is or resembles the facsimile specimen certified to or filed with Bank and Corporation agrees to hold Bank harmless for any losses Bank may suffer from payment of a check, draft or order bearing a facsimile signature on such against the Corporation's account.

FURTHER RESOLVED, That Bank is hereby authorized to honor any and all withdrawal items against the Corporation's funds although payable to the officer or agent signing, or countersigning the same, or payable to Bank whether such withdrawals are presented for cash or for credit to the personal account of such officer or agent or the person presenting the same, and Bank need make no inquiry into the circumstances of the issuance of a specimen of any such item or as to the application of the proceeds thereof.

FURTHER RESOLVED, That Bank may debit this account its prevailing customary charge for each returned check or item and service charges for maintaining the account.

FURTHER RESOLVED, That Bank is hereby authorized and requested to continue to rely upon these resolutions and the authority granted herein until written notice of any amendment, change or revocation, in form acceptable to Bank has been delivered to the Cashier of Bank and unless, and until, the Cashier shall have acknowledged receipt of such notice in writing, such notice shall not affect any action taken by Bank.

FURTHER RESOLVED, That these resolutions and the authority herein granted shall pass and inure to any successors or assigns of Bank.

The above resolutions are in conformity with the Articles of Incorporation and the Bylaws of the Corporation, have never been modified or repealed and are now in full force and effect.

9/2/86
Date

Corporate Secretary

(Designating MBank Preston as Depository and Granting Authorizations)

APPENDIX - 2

| | |
|---|---|
| **ACCOUNT NAME** Haywood Jordan McCowan of Dallas, Inc. | **ACCOUNT NUMBER** 07-0303-1518    SAVINGS ☐   DDA ☐   MMA ☐ |

COMPLETE BOTH SIDES OF THIS FORM

**ADDRESS**
409 Centre St.
Dallas, Texas 75208

ADDRESS FOR BANK STATEMENTS

## TWO SIGNATURES REQUIRED

| TYPE OF BUSINESS architects | PHONE 943-4608 |
|---|---|
| SERVICING OFFICER COH | ACCEPTED BY. BNT |
| IRS TAX ID # | DATE 9/2/86 |
| RELATED ACCOUNTS. | OPENING DEPOSIT $ 45,558.94 |

| ACCOUNT NAME Haywood Jordan McCowan of Dallas, Inc. | ACCOUNT NUMBER 07-0303-1518 |
|---|---|

SPECIMEN SIGNATURES OF AUTHORIZED CHECK SIGNERS

1.

2.

3.

TWO SIGNATURES REQUIRED -
4. ONE SIGNATURE OF THE TWO MUST BE THAT OF
WILLIE C. JORDAN, JR.

5.

6.     OPENED 9/2/86

7.

**Depositor's Contract**

Items received for deposit or collection are accepted on the following terms and conditions. This bank acts only as depositor's collecting agent and assumes no responsibility beyond its exercise of due care. All items are credited subject to final payment and to receipt of proceeds of final payment in cash or solvent credits by this bank at its own office. This bank may forward items to correspondents and shall not be liable for default or negligence of correspondents selected with due care nor for losses in transit, and each correspondent shall not be liable except for its own negligence. Items and their proceeds may be handled by any Federal Reserve Bank in accordance with applicable Federal Reserve rules, and by this bank or any correspondent, in accordance with any common bank usage, with any practice or procedure that a Federal Reserve bank may use or permit another bank to use, or with any other lawful means. This bank may charge back, at any time prior, to midnight on its business day next following the day of receipt any item drawn on this bank which is ascertained to be drawn against insufficient funds or otherwise not good or payable. An item received after this bank's regular afternoon closing hour shall be deemed received the next business day.

In case this bank is requested to stop payment on an item or items, the depositor agrees to hold this bank harmless for all expenses and costs incurred by this bank on account of refusing payment of said item, and further agrees not to hold this bank liable on account of payment contrary to this request if same occur through inadvertence, accident or oversight, or if by reason of such payment other items drawn by the depositor are returned insufficient. Request for stop payment is effective for 60 days, but renewals may be made from time to time. No stop payment request, renewal or revocation shall be valid if oral or unless served as this bank.

It is agreed that this account, whether active or dormant (an account shall be considered dormant when no deposit shall have been made or checks drawn for a period of one year), shall be subject to service and maintenance charges heretofore adopted by this bank and now in effect, and to such charges as may hereafter be adopted by this bank. New service and maintenance charges and changes in existing charges shall become effective upon the posting of notice in the office of this bank for a period of ten days and the publication thereof in any local newspaper before the end of said period or upon giving the depositor not less than ten days notice in writing mailed to his last known address. Such charges may be deducted from the depositor's account and this bank shall not be liable for dishonoring checks, drafts, notes, acceptances or other instruments because of insufficient funds resulting from the deduction of such charges.

This bank accepts no responsibility for payment of checks which are presented the same day deposits are made, unless there is already a sufficient balance to the depositor's credit in addition to such deposits. Deposits are posted to accounts on the day following the day received by this bank.

This bank is authorized to mail statements and cancelled checks to the last address known to this *

10-01-0014-4012/02

APPENDIX - 3

ine following Attachments and Exhibits and Exhbits are hereby acknowledged and accepted as parts, terms, and/or conditions of this Agreement:

| | |
|---|---|
| Exhibit 1 | Fee Schedule |
| Exhibit 2 | DISD/PMS Agreement |
| EXHIBIT 3 | Management Procedures And Minority Business Opportunities - Forms And Formats Furnished To the Architect For Use In Design And Construction Process. |
| Exhibit 4 | Construction Budget/Cost Limitation Memorandum (to be issued by PMC (1) upon authorization to begin design, (2) at completion of DD, (3) upon award of the Contract for Construction). |
| Exhibit 5 | Enumeration of Construction Observation Services |

IN TESTIMONY WHEREOF, THE PARTIES HERETO HAVE CAUSED THIS INSTRUMENT TO BE EXECUTED IN TRIPLICATE, EACH TO HAVE THE FORCE AND EFFECT OF AN ORIGINAL, ON THIS _____*16 th*_____ DAY OF _____*August*_____, 19_*86*_.

FIRST PARTY (PROJECT MANAGEMENT SYSTEMS)

BY _____
FOR SPAW-GLASS, INC.

BY _____
FOR THE WHITE BUDD VAN NESS PARTNERSHIP

Haywood Jordan McCowan of Dallas, Inc.
SECOND PARTY (ARCHITECT-ENGINEER)

BY _____
(PRINCIPAL) (PARTNER) (OFFICER)

27.

APPENDIX - 4

EXHIBIT 4

To The Agreement for Architects' Services

Agreement Date:       May 28, 1986

Firm:                 Haywood Jordan McCowan SAT, Inc.

Project:              Paul Dunbar Elementary School
                      Project #139/8516

Construction Budgets/Cost Limitations:

| | |
|---|---|
| Rehab/Remodel Existing Facilities | $ 651,120 |
| New Facilities | 570,880 |
| Windows | 50,000 |
| Total Construction Budget | $1,272,000 |

Compensation for Basic
Services and Window Package
Rehab & New $1,222,000 x 9.1970% =    $112,387.34
Windows (See Exhibit 6 attached) =    $  3,344.18

Fees not to Exceed Total          =    $115,731.52
Maximum Fee Thru D.D. (38% of Fee) =   $ 43,977.97

Adjustment to the compensation for basic services may be made upon Board
Approval of the "Design Manual" at completion of the Design Development
Phase and/or upon award of the Contruction Contract should approval be given
by the Board of Education of D.I.S.D. for a change  in scope  of the project
or services.

Authorized by                              Acknowledged by

PROJECT MANAGEMENT SYSTEMS

_____
James B. Jones, II

_____
Date   8/14/86