NATIONAL ADVERTISING
COMPANY, Appellant

v.

Jimmy BROWN d/b/a J & L
Auto Sales, Appellee.

No. 12–93–00146–CV.

Court of Appeals of Texas,
Tyler.

Nov. 30, 1994.

Ronnie Horsley, Tyler, for appellant.

T.J. Baynham, Jr., Tyler, for appellee.

RAMEY, Chief Justice.

The Appellant, National Advertising Company ("National"), appeals a judgment in favor of Appellee, Jimmy Brown d/b/a J & L Auto Sales ("Brown"). Originally, the action was filed by National as a suit on a sworn account, seeking to recover the unpaid rental on a billboard; Brown counterclaimed for fraud. After a jury trial, the court entered a judgment that Brown recover twenty-five thousand dollars from National on his counterclaim. We will reverse and render judg-

ment that each party take nothing against the other.

The facts were highly contested, most of the disputed evidence relating to the conduct of Dan Herod, president of Finlayson Advertising ("Herod"). In early 1989, Brown, a local used car dealer, was approached by Herod, who suggested that he consider utilizing billboard advertising through National, a company which erects and leases roadside billboards. Brown was acquainted with Herod because Herod had previously worked at the bank with which Brown did most of his financing. Brown gave Herod his ideas regarding the billboard's artwork and copy, and soon thereafter Herod reviewed with Brown a proposed contract form that had been provided by National.

According to Herod's testimony, Brown had previously signed a standard "letter of recognition," a written agreement naming Herod as Brown's advertising agency.[1] Herod further testified that, when he met with Brown to finalize the billboard matter, all of the blanks in the contract form were filled in, and Brown personally signed it. One of the contract terms provided that the sign would be located at a corner at the intersection of Loop 323 and the Old Jacksonville Highway.[2] Brown had expressed a desire for a location on Highway 155, but Herod claims that Brown was unwilling to pay the higher rent for such location and that he agreed to accept the Old Jacksonville Highway location so long as the billboard rent was less than $400.00 per month. It was Herod's testimony that Brown's only revision of the contract terms was his request to reduce the term of the lease from twelve months to six months. This National subsequently refused, and according to Herod, he informed Brown that such change was not acceptable to the company.

Brown testified, to the contrary, that, when Herod first brought him the National contract, the blanks on the form were not filled in, except for the rent amount, $350.00 per month, and the term, twelve months.

Brown objected to the twelve-month term, and Herod thereupon struck out the "12" and inserted a "6", placing his own initials over the proposed change. According to Brown, the only billboard location he and Herod ever discussed was the Highway 155 site. Brown further denied ever signing the contract, and maintained that Herod left neither the original nor a copy of the agreement with him. Nevertheless, before receiving further communications from Herod, Brown made an application for credit with National.

Brown testified that Herod thereafter contacted him, informing him that his billboard was in place. Upon learning that the billboard had been erected, not at Highway 155, but at the Old Jacksonville Highway, Brown claims to have demanded a copy of the contract; on receipt, Brown testified that he discovered, not only the location change, but also that the term of the contract had been revised back to the original twelve months duration, and that someone other than himself had written what purported to be his signature on the contract. On being invoiced, Brown paid the first month's rent, $350.00, but thereafter refused to make further payments.

The jury findings were,

1) that Herod was an agent for *both* Brown and National,

2) that National and Brown never entered into a contract with each other,

3) that either National or its agent, Herod, defrauded Brown, and

4) that Brown should be awarded $25,-000.00 in damages, a sum that included an unspecified amount of exemplary damages.

National assigns nine points of error in this appeal, each challenging either the legal or factual sufficiency of the evidence supporting one of the jury findings. We will first consider National's second point of error, that there was no evidence supporting the jury's finding that Herod was National's

---

1. Herod testified that, when he sold his business, this document was transferred to the new owners, and that they were unable to locate it for this trial.

2. Both disputed sites were on Loop 323, one at its intersection with the Old Jacksonville Highway and the other at its intersection with the Old Jacksonville Highway.

agent. This was an issue on which National did not have the burden of proof.

When a "no evidence" point is raised by a party who does not have the burden of proof on an issue,

> we must examine the record in the light most favorable to the finding to determine if there is any probative evidence, or reasonable inferences therefrom, which support the finding, and we must disregard all evidence or reasonable inferences therefrom to the contrary. *Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.*, 766 S.W.2d 264, 276 (Tex.App.—Amarillo 1988, writ denied). If there is any evidence of probative force to support the finding, the point must be overruled and the finding upheld. *In re King's Estate*, 150 Tex. 662, 664, 244 S.W.2d 660, 661 (1951).

*Matter of Marriage of DeVine*, 869 S.W.2d 415, 420 (Tex.App.—Amarillo 1993, no writ).

■ The record is devoid of any evidence that Herod and National entered into an express agency agreement, nor that any agency relationship could be implied. Brown, however, relies on the doctrine of apparent authority in attempting to charge National with a principal's responsibility for Herod's acts.

> Apparent authority arises either from a principal knowingly permitting an agent to hold himself out as having authority or by principal's actions which lack such ordinary care as to clothe an agent with indicia of authority, thus leading a reasonably prudent person to believe that the agent has the authority she purports to exercise. *Ames v. Great Southern Bank*, 672 S.W.2d 447, 450 (Tex.1984). A prerequisite to finding apparent authority is evidence of conduct *by the principal* relied upon by the party asserting estoppel which would lead a reasonably prudent person to believe an agent had authority. *Id.* (Emphasis added).

*Haywood, Jordan v. Bank of Houston*, 835 S.W.2d 738, 742 (Tex.App.—Houston [14th Dist.] 1992, no writ). There was no evidence in the record that National authorized Herod to hold himself out as National's agent. The question then becomes whether there was evidence that National acted with such lack of ordinary care that it might have "clothed" Herod with apparent authority to act on its behalf.

■ Brown argues that he was justified in believing that Herod was acting on National's behalf because Herod contacted him on behalf of National, and that the proposed contract form featured National's name at the top. But the contract which National admittedly submitted to Herod prior to Herod's contacting Brown cannot be held to have misled Brown that Herod was National's agent, since the contract, on its face, and prominently, provides that any agency that might exist is the *advertiser's* agency, not National's. "[A]pparent authority is not available where the other contracting party has notice of the limitations of the agent's power." *Douglass v. Panama, Inc.*, 504 S.W.2d 776, 779 (Tex.1974). A document which on its face unambiguously *denies* agency status cannot be reasonably relied upon to establish it. *Colonial Leasing Co. v. Kinerd*, 733 S.W.2d 671, 674 (Tex.App.—Eastland 1987, *rev'd on other grounds* ); *Kinerd v. Colonial Leasing Co.*, 800 S.W.2d 187 (Tex. 1990).

■ As noted above, a principal, to be bound by the acts of an agent with apparent authority, will be so bound only by his own acts; the ostensible agent's acts, alone, will not suffice to invest him with apparent authority to act for the principal. *Munoz v. II Jaz Inc.*, 863 S.W.2d 207, 209 (Tex.App.—Houston [14th Dist.] 1993, no writ). Here, there was no allegation that National was aware of any reason not to do business with Herod, or that its entry into a business relationship with him somehow would serve to clothe him with apparent authority in the eyes of a reasonably prudent advertising customer.

■ Brown argues that National's failure to diligently investigate his assertion made to a National employee that his signature was forged somehow served to ratify Herod's acts. But ratification is an affirmative defense that requires specific pleadings. *Natland Corp. v. Baker's Port, Inc.*, 865 S.W.2d 52, 65 (Tex.App.—Corpus Christi 1993, writ

denied). Brown did not plead that National ratified the alleged acts of Herod.

 Furthermore, there was no evidence to support such allegation.

Unless there is evidence of full knowledge by the principal of the agent's unauthorized acts, or, alternatively, unless there is full evidence of facts from which knowledge can reasonably be imputed to the principal, the evidence as to ratification will be deemed to be insufficient. *Thermo Products v. Chilton Ind. School Dist.,* 647 S.W.2d 726, 733 (Tex.App.—Waco 1983, writ ref'd n.r.e.). Where silence is the basis of ratification, it is required that knowledge of all material facts be possessed by the principal. *BancTexas Allen Pkwy [v. Allied American Bank],* 694 S.W.2d [179] at 181 [Tex.App.1985] (*citing Diamond Paint Co. of Houston v. Embry,* 525 S.W.2d 529 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ ref'd n.r.e.)).

*Lang v. Lee,* 777 S.W.2d 158, 162 (Tex.App.—Dallas 1989, no writ). Brown testified that he told National of the forgery of his signature; such fact put National on notice of his claim. But the standard articulated above requires *actual knowledge,* not simple notice.[3] National's claim against Brown, which Brown argues amounts to a ratification of Herod's claimed forgery, is in fact premised on Herod being Brown's agent, a position unwaveringly asserted by National, and consistent with the jury's finding that Herod was Brown's agent as well as National's. There was no credible evidence that National actually knew that Herod forged the Brown signature, or that it was suing Brown on a contract it knew Brown had never signed. Since there was no evidence that National ever gained full knowledge of Herod's alleged forgery, it cannot have ratified it.

For the reasons stated, National's second point of error is sustained. It will not be necessary to address the other points of error. The judgment against National is reversed, and judgment rendered that each party take nothing against the other.

---

3. The law may sometimes impute knowledge where notice of a fact creates a duty to investigate further, and the result of such investigation could reasonably be expected to lead to discovery of the disputed fact. *Flack v. First National Bank of Dalhart,* 148 Tex. 495, 226 S.W.2d 628, 632 (1950). But Brown identifies no basis for a legal duty owed him by National to further inquire before attempting to enforce a good faith claim. Furthermore, even if such duty existed, Brown does not suggest how National could have resolved the conflicting testimony of Brown and Herod short of this very lawsuit. The "notice" given to National was not, as in most imputed knowledge cases, on a subject that was capable of easy verification; it was, in fact, the assertion of a defense to what, by all the evidence, would have seemed a just claim in the eyes of National.